UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Motion Hearing Date and Time: 2/19/21 @ 10:00 a.m.

--------------------------------------------------------------x

In re:

Chapter 7

Mark A. Nordlicht,

Case No. 20-22782 (RDD)

       Debtor,

--------------------------------------------------------------x

Richard Stadtmauer and Marisa Stadtmauer,

      Plaintiffs,

Adv. Pro. No. 20-06489 (RDD)

     - against -

Mark Nordlicht, Dahlia Kalter, 535 W.E.A. Group
LLC, OBH 2308 LLC, NYFLA Investors LLC, Gilad
Kalter Cook Islands Trust Limited, Trenor Investment
Partners LP, Henley Investment partners LP and John
Does 1-50,

      Defendants.

--------------------------------------------------------------x

## DEBTOR'S REPLY TO STADTMAUERS' OBJECTION TO THE TRUSTEE'S MOTION TO APPROVE THE SETTLEMENT (ADV. DKT NO.'S 12-13) AND IN FURTHER SUPPORT OF THE SETTLEMENT (ADV. DKT NO. 7)

     The Chapter 7 Debtor submits this Reply to the Objection by Richard and Marisa

Stadtmauer[1] (the "Stadtmauers") to the Trustee's Motion to Approve the Stipulation of

Settlement (the "9019 Motion"). The Trustee's 9019 Motion must be granted, the Settlement

(defined below) must be approved, and the Stadtmauers' Objection must be overruled because:

    **(A)    Stadtmaeur's Purported Superior Offer To Buy The Trustee's Claims Is Invalid, Since He Seeks To Pursue The Claims On His Own Behalf.** *In re Boyer*, **372 B.R. 102, 105 (D. Conn. 2007), aff'd, 328 Fed. Appx. 711 (2d Cir. 2009)("The sale or assignment of avoidance claims to an objecting creditor is not permitted if the creditor intends to pursue the claims on its own behalf");**

    **(B)    Even If Stadtmaeur Could Revise His Purported Offer At This Late Stage To Seek Derivative Standing, It Would Still Not Be In the Best Interests Of The Estate Since Stadmauer Is Conflicted, Highly Antagonistic Towards The Potential Defendants, And It Would Delay The Conclusion Of The Bankruptcy Indefinitely.** *In re Metropolitan Elec.*

---

[1]    Richard Stadtmauer is a convicted felon, *See, United States v. Stadtmauer*, 620 F.3d 238, 242 (3d Cir. 2010) and a suspended attorney .

*Mfg. Co.*, 295 B.R. 7 (Bankr. E.D.N.Y. 2003); *see also*, *In re Starr*, 2012 WL 2921375 (Bankr. N.D. Ohio July 17,  2012);

(C)     Stadtmauer's Proposed Order is Not "Superior," Since It Is Based Solely On Conditional And Future Payments And Ignores That The Settling Parties Are Waiving Their Claims;

(D)     Stadtmaeur's Purported Offer To Buy The Trustee's Claims Is An Improper Attempt To Evade The Court's November 23, 2020 Order Which Denied Stadtmauers' Extension Motion To Object To The Debtor's Discharge *With Prejudice,* And The Strict Deadlines of F.R.B.P. 4004. *See*, *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996);

(E)     The 9019 Motion Must Be Granted Under The *Iridium* Factors since

(1)     The Stadtmauers Tacitly Concede That The Settlement Was The Product Of Arms-Length Bargaining, Which Weighs In Favor Of Approval;

(2)     The Stadtmauers Admit That Both The Trustee And His Counsel Are Experienced Bankruptcy Professionals, And The Court Is Eminently Qualified, Which Weighs In Favor Of Approval;

(3)     The Litigation Will Be Complex, Protracted And Subject to Delay, Since The Stadtmauers Sought To Add More Defendants And Admit That It Will Require Extensive Discovery And A Trial, Which Weighs In Favor Of Approval;

(4)     No Parties Objected To The 9019 Motion Except The Stadtmauers And PPVA, Which Only Filed A Limited Joinder To The Stadtmauers' Objection, Which Weighs In Favor Of Approval;

(5)     The Stadtmauers Misstate The *Iridium* Factor Regarding Releases, Which In Any Event Are Reasonable Herein;

(6)     The State Court's Preliminary Rulings, Including The February 5, 2020 *Ex-Parte* Order Of Attachment And The *July 1, 2020 Post-Petition Order,* Are Not Law Of The Case As To The "*Related Parties*," Especially Since Four Of The "*Related Parties*" Were Not Even Parties To The State Action. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 129 n. 8 (1st Cir. 2006)(order of attachment issued by State Court did not become law of the case upon removal to the District Court); *Canaday v. Koch*, 598 F.Supp. 1139, 1151 (E.D.N.Y. 1984)("The granting of a preliminary injunction is not a determination on the merits and does not invoke the doctrines of res judicata or law of the case"); *see also, Bagola v. Kindt*, 131 F.3d 632, 637 (7th Cir. 1997)(the law of the case doctrine does not apply to non-parties, or even to parties that did not have a prior opportunity to litigate or that the court did not have jurisdiction over); and

**(F)     The Stadtmauers' Attachment Claim Belongs To The Trustee, Since They Previously Admitted That All Claims In The Removed Action, Including The Attachment, Alter Ego And Fraudulent Transfer Claims, Belong To The Estate (Dkt No.'s 19, ¶'s 6 & 8; 19-1, ¶'s 3 & 10; 19-2, ¶ 4; & 42, p. 8).**

## BACKGROUND

**The Stadtmauers Obtain An *Ex-Parte* Order Of Attachment
In The State Action Without Either Notice Or A Hearing**

1.     On February 5, 2020, the Stadtmauers commenced an action against the Debtor and others in Supreme Court, Westchester County (Index No. 51825/20)("State Action"). The Complaint asserted four causes of action (each a "COA"), i.e., that the Debtor allegedly fraudulently transferred and concealed assets (1st & 2d COA's), an alter ego claim (3d COA) and a pre-judgment attachment claim (4th COA)(Ex. A).

2.     The Complaint essentially alleged that the Debtor fraudulently transferred and concealed real property located at (a) 245 Trenor Drive, New Rochelle, New York ("245 Trenor Drive"), which the Debtor never owned and which Dahlia Kalter bought way back in *2003*; and (b) 535 West End Avenue, Unit no. 15, New York, New York ("535 WEA"), which the Debtor never owned and which was bought way back in *2010* by W.E.A. Group LLC ("WEAG"), of which the Debtor was never a member.

3.     On February 5, 2020, the same day that they filed the Complaint to commence the State Action, the Stadtmauers, without either any notice or any Hearing, obtained an ***Ex-Parte*** Order of Attachment (the "***Ex-Parte*** Order of Attachment") against 245 Trenor Drive and 535 WEA. The Stadtmauers 45 page Objection does not disclose the ***Ex-Parte*** Nature or date of the Order. Two days later, on February 7, 2020, the Stadtmauers' moved to confirm the ***Ex-Parte*** Order of Attachment, which the State Court granted by Decision and Order dated May 22, 2020.

4.      On June 25, 2020, the Stadtmauers moved in the State Action to supplement the

Complaint together with a proposed supplemental complaint ("Supplemental Complaint"), which sought to add new proposed defendants 16th Avenue Associates, LLC ("16th Avenue"), Trenor Trust and Jerome Management LLC ("Jerome Management")(collectively, the "Proposed Supplemental Defendants").

5.      The Stadtmauers' Supplemental Complaint asserted that the ***Debtor's assets***, including all assets that are traceable to the Debtor or his alter ego entities or equitably owned by the Debtor, are held in a ***constructive trust*** for the ***Stadtmauers*** (SuppCompl. ¶'s 105-107), or to the ***exclusion*** of all ***the Debtor's other creditors*** ("***Constructive Trust Claim***")(the relevant excerpts are attached as Exhibit B).

### Two Days After Receipt Of E-Filed Notice Of The Bankruptcy (6/29/20), The State Court Uploaded A Decision Denying Motions To Dismiss The Complaint (On 7/01/20)

6.      On June 29, 2020, the Debtor filed a voluntary Chapter 7 petition which stayed the State Action, including the Stadtmauers' motion to supplement the Complaint, and a petition filed by the Stadtmauers in the Southern District of New York (20-CV-00347) to confirm an arbitration award from an arbitration proceeding filed way back in ***2016***.

7.      On the very same day, ***June 29, 2020***, at ***3:46 p.m.***, the Debtor's counsel e-filed on the Docket of the State Action, a document entitled "Suggestion of Bankruptcy And Automatic Stay Of Proceedings" with a copy of the Debtor's Petition (NYSCEF Doc. No. 224) (Ex. C). The Stadtmauers did not dispute that the automatic stay applied.

8.      Nevertheless, ***two days later on July 1, 2020***, at 9:37 a.m., the State Court uploaded a brief three page Decision and Order denying the motions to dismiss the Complaint (the "July 1, 2020 Post-Petition Order")(NYSCEF Doc. No. 226)(A copy of the relevant excerpts of the Docket are attached as Exhibit D; a copy of the ***July 1, 2020 Post-Petition Order*** is attached as Exhibit E).

4

9.      In apparent recognition that the State Court uploaded the July 1, 2020 Post-Petition Order after notice of the Bankruptcy, the Stadtmaeurs have *failed to include it as an Exhibit* despite referencing it in their Objection (StadtObj. p. 1).

10.     On July 29, 2020, certain defendants in the State Action filed a Notice of Removal which removed the State Action to District Court which was referred to Bankruptcy Court under Adv. Pro. No. 20-06489 (the "Removed Action").

**The Stadtmauers Submit False Emails And Statements, And An Improper Motion To Extend Their Time To Object To Discharge And Dischargeability Of Debt**

11.     On June 30, 2020, the law firm of Steptoe & Johnson LLP ("Steptoe") filed a Notice of Appearance for the Stadtmauers (Dkt No. 3).[2] Mark Tulis was appointed as interim Chapter 7 Trustee and by operation of law has become the permanent Chapter 7 Trustee of the Debtor's estate.

12.     On July 2, 2020, a Notice was filed on the Docket scheduling the deadline to object to the Debtor's discharge and dischargeability of debt for *October 5, 2020* (Dkt No. 4), which was provided to both Lyman and the Stadtmauers (Dkt No. 4-1).

13.     On September 3, 2020, the Debtor executed a Stipulation drafted by the Trustee, "So Ordered" by the Court on September 8, 2020 ("Trustee Stipulation")(Dkt No. 28), which extended the time for only the Chapter 7 Trustee and UST to object to the Debtor's discharge, but *not dischargeability*. On September 15, 2020, the Debtor executed a Stipulation drafted by the Receiver for the PPCO Entities, "So Ordered" by the Court on September 15, 2020 ("PPCO Stipulation")(Dkt No. 29), which extended the time for only the PPCO Entities to object to the Debtor's discharge, but *not dischargeability*. On October 1, 2020, the Debtor executed a

---

[2]      Steptoe's Notice of Appearance listed three separate attorneys: Jeffrey M. Reisner; Nathaniel J. Kritzer ("Kritzer"); and Jason E. Meade, and was e-filed by a fourth attorney, Kerri A. Lyman ("Lyman").

Stipulation drafted by the PPVA Parties, "So Ordered" by the Court on **October 2, 2020** (the "PPVA Stipulation")(Dkt No. 38), which was **expressly limited to the PPVA Parties**.

14.     On **October 5, 2020**, the **last day to object to the Debtor's discharge and/or dischargeabilty**, Kritzer emailed Scott Krinsky, counsel to the Debtor, at **10:42 a.m. (Ex. F)**, **wrongly stating** that the **Docket shows** that the **time to object** to discharge was **extended for all** to **December 7, 2020**: "**[a]s we read the docket ... the general deadline to object to discharge is 12/7/20**" (emphasis added). Nevertheless, Kritzer stated that out of "an abundance of caution," he was requesting an extension of the Stadtmauers' deadline to object to the Debtor's **discharge**.

15.     Prior to Kritzer's email, Stadtmauers' counsel had not contacted the Debtor's Bankruptcy counsel to request any extension of the Stadtmauers' time to object to the Debtor's discharge or dischargeability. Later that night, at **8:37 p.m.**, the Stadtmauers filed their Motion to Extend Time to Object to Discharge and Dischargeability ("Extension Motion")(Dkt No. 40).

16.     Revealingly, the Stadtmauers **backtracked** from their false assertion in their first email that the Docket showed that the discharge deadline was extended to all parties to December 7, 2020, and merely asserted that the discharge deadline "**may have been extended for all parties**" (emphasis added)(ExtMot. ¶ 1, Ft. 1); which was also **false**.

17.     Additionally, although the Stadtmauers conceded that they must show "good cause" for the extension (ExtMot. ¶ 2), they failed to even address, much less satisfy, any of the relevant factors to show "cause" and/or to seek any Rule 2004 discovery prior to the October 5th deadline (Debtor's Obj. ¶'s 25-30; Dkt No. 52).

18.     Instead, the Stadtmauers asserted that "good cause" existed because "identical adjournments" were granted to the PPCO Entities and the PPVA Parties extending their time to, *inter alia*, seek an exception to discharge (ExtMot. ¶ 3). But the Stadtmauers' assertion was again

**false**, since the **_extensions_** granted to the PPCO Entities and PPVA Parties **_were not identical_**, as the PPCO Entities did not request an extension for dischargeability.

19.      Furthermore, the Stadtmauers ignored that they could not piggyback upon extensions that were expressly limited to other parties. *(Debtor's Obj. ¶'s 41-46, Dkt No. 52);* *See, In re Rivera Lugo*, 503 B.R. 13, * 18 (Bankr. D.P.R. 2013); *In re Butler*, 94 B.R. 433, 437 (Bankr. N.D. Texas 1989).

20.      Aside from failing to show "cause", the Extension Motion failed to contain a Hearing or return date (Id, ¶'s 54-57). In order to circumvent their failure to provide a Hearing date, **_18 days later_** on **_October 23, 2020_**, the Stadtmauers improperly filed a Notice of Presentment for the Extension Motion (Dkt No. 46). In fact, it was not until November 6, 2020, the Stadtmauers finally filed their Notice of Hearing (Dkt No. 54).

21.      On November 3, 2020, the Debtor timely filed his Objection to the Extension Motion (Dkt No. 52), which transformed the Extension Motion into a contested matter under F.R.B.P. 9014. *See, In re Kramer*, 492 B.R. 366, 370 (Bankr. E.D.N.Y. 2013). Moreover, the Objection referenced both the Removed Action and the Stadtmauers' allegations that the Debtor allegedly fraudulently transferred and concealed property (Id, ¶'s 6 & 36).

**The Court Denies The Stadtmauers' Extension Motion, Including The**
**Time To Object To  Discharge And Dischargeabilty _With Prejudice_**

22.      On November 13, 2020, the Stadtmauers submitted a 19 page Reply with Exhibits A through K in further support of their Extension Motion. The 19 page Reply was improper since it raised virtually all new arguments that were not contained in their two page, five paragraph Extension Motion.

23.      Moreover, the Reply **_repeated_** the **_Stadtmauers' false statement_** from the Extension Motion that they were **_merely requesting the "identical" or the "same" "stipulation"_** that the Debtor entered into with the PPCO Entities and PPVA Parties, since **_those stipulations_**

7

*were not identical* as the PPCO Entities did not request an extension of time to object to dischargeabilty of debt (Reply p. 1, 4 & 6; Dkt No. 57).

24.    Additionally, the Stadtmauers' 19 page Reply *repeatedly alleged that the Debtor has fraudulently concealed property, including through Dahlia Kalter, 16ᵗʰ Avenue and Barbara Nordlicht* (Reply pp. 8-12; Dkt No. 57). The Stadtmauers failed to allege, however, that they had a secured claim. On November 15, 2020, the Debtor submitted a Supplemental Objection in response to the Stadtmauers' Reply which pointed out, *inter alia*, the Stadtmauers' numerous improper acts and false statements (Dkt No. 58)..

25.    On November 16, 2020, the Court held a Hearing on the Stadtmauers' Extension Motion and denied their request to extend their time to object to the Debtor's discharge and dischargeability of their debt (the "November 16, 2020 Hearing").

26.    The Court further noted that counsel for the Stadtmauers misrepresented "either the law or the facts" at least three times in matters before the Court in this Case, including issuing improper Subpoenas with no underlying proceeding (see below), filing the Extension Motion by Notice of Presentment "which was inappropriate," and misciting legal authority (11/16/20 Trans. pp. 9 [L's 22-25], 10[L-1], 13[L's 16-25], 14 [L-1], 21[L's 24-25], & 22[L-1])(Ex. G).

27.    On November 23, 2020, the Court issued an Order denying the Stadtmauers' Extension Motion (the "November 23, 2020 Order")(Dkt No. 67). Moreover, the Court expressly denied *with prejudice* the Statmauers' request for an extension of time pursuant to F.R.B.P. 4004(b) to object to the Debtor's discharge under 11 U.S.C. § 727(a).

28.    The Court stated: "ORDERED that the [Extension] Motion's request for an extension of time pursuant to Fed. R. Bankr. P. 4004(b) to object to the Debtor's discharge under 11 U.S.C. § 727(a) is denied *with prejudice*." (emphasis added)(Ex. H).

29.    In apparent recognition of the validity of the Court's November 23, 2020 Order,

the Stadtmauers' failed to either appeal or move to reargue the Court's November 23, 2020 Order

and are now time-barred from doing so.

**The Stadtmauers Unlawfully Issue Seven Non-Party Subpoenas In The**
**Bankruptcy Case With No Legal Basis Or Authority**

30.    On or about October 28 & 30, 2020, the Stadtmauers issued *seven non-party*

*Subpoenas* in the *Bankruptcy Case* to: (1) Dahlia Kalter, (2) Barbara Nordlicht; (3) 16th Avenue;

(4) NYFLA; (5) Hutton Ventures LLC ("Hutton"); (6) Metropolitan Commercial Bank ("MCB");

and (7) International Financial Enterprise Bank ("IFEB")(the "Non-Party Subpoenas")(Ex. I).

31.    When confronted as to their specific legal basis and authority to issue the *seven*

*Non-Party Subpoenas*, the Stadtmauers acknowledged that they were not issued pursuant to

either a Rule 2004 Order, adversary proceeding or any contested matter, but refused to provide

any specific legal basis or authority for the Non-Party Subpoenas other than the generic

references in the body of the Subpoenas to F.R.B.P. 9016 and F.R.C.P. 45.

32.    For example, on November 2, 2020, Sari Kolatch, counsel for Barbara Nordlicht

and NYFLA, conferred with Kritzer requesting that the Stadmauers withdraw the Subpoenas as

to her clients. During their conference, Kritzer *admitted* that the Subpoenas were not being

issued pursuant to any adversary proceeding or *any contested matter*.

33.    Moreover, since the Subpoenas were not issued pursuant to any Rule 2004 Order,

adversary proceeding or any contested matter, they were clearly defective. *See, In re Rochester*

*Drug Cooperative, Inc.*, 2020 WL 5525798 * 2 (Bankr. W.D.N.Y. Sept. 11, 2020); *accord, In re*

*Murray*, 2020 WL 6019638 * 1 (Bankr. E.D. Mich. Oct. 2, 2020).

34.    In fact, in recognition that the *Subpoenas were defective*, the *Stadtmauers*

*withdrew their Subpoenas to Dahlia Kalter, Barbara Nordlicht, NYFLA* and *16th Avenue*.

35.    Nevertheless, the Stadtmauers refused to withdraw their Subpoenas to MCB,

IFEB and Hutton. Furthermore, the ***Stadtmauers improperly received documents from MCB pursuant to their unauthorized Subpoena*** (Ex. J).

36.     On November 6, 2020, Michael Levine, counsel for Dahlia Kalter, 535 WEA, OBH, Trenor Trust (sued as Gilad) and Trenor Investment (collectively, the "Kalter Defendants") wrote a letter to the Court requesting a Conference for permission to file a motion to quash the remaining Subpoenas, including as to MCB & IFEB based on, *inter alia*, the Stadtmauers' lack of authority since they were neither issued pursuant to a Rule 2004 Order nor an adversary proceeding, and Kritzer admitted to Ms. Kolatch that they were not issued pursuant to a contested matter.

37.     On November 9, 2020, Kritzer wrote a letter to the Court in reply (Dkt No. 55), tacitly conceding that the Subpoenas were not issued pursuant to either a Rule 2004 Order or an adversary proceeding. Nevertheless, Kritzer wrongly asserted that the Stadtmauers still had authority to issue the Subpoenas under F.R.B.P. 9016, and improperly alleged for the first time that the issue as to their lack of authority was now moot since the Debtor's November 3, 2020 Objection to the Extension Motion created a contested matter pursuant to F.R.B.P. 9014 which cured the Subpoenas that were previously issued on ***October 28 & 30, 2020.***

**The Court Rules That The Stadtmauers Had No Legal Basis Or Authority
To Issue The Non-Party Subpoenas In The Bankruptcy Case**

38.     On November 10, 2020, Mr. Levine wrote a letter to the Court in reply (Dkt No. 56), pointing out that the Non-Party Subpoenas were clearly unlawful because, *inter alia*,

(a)     the Stadtmauers lacked authority to issue them absent either a Rule 2004 Order, adversary proceeding or a contested matter, *See, Rochester Drug*, 2020 WL 5525798 * 2; *accord, Murray*, 2020 WL 6019638 * 1;

(b)     they were void ab initio upon their issuance on October 28th & 30th, and therefore could not be cured by the subsequent creation of a contested matter by the Debtor's November 3rd Objection to the Extension Motion; and

(c)     they sought discovery related to fraudulent transfers which are the exclusive duty

of the Chapter 7 Trustee. *In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010).

39.     Later that day (11/10/20), the Court held a Conference relating to the discovery issues (the "November 10, 2020 Conference"), and ruled that the Stadtmauers had no legal basis or authority to issue the Non-Party Subpoenas since they were not issued pursuant to Rule 2004 or an adversary proceeding (Ex. G, 11/16/20 Trans. pp. 13 [L's 23-24], 21 [L's 24-25] & 22 [L-1]). The Court further noted that any discovery issued in connection with a contested matter arising from the Extension Motion had to be issued *prior to the October 5, 2020 objection deadline*, and the *Subpoenas were not issued until October 28 & 30*[th].

**The Stadtmauers' November 2, 2020 Motion Unlawfully Sought Mandatory**
**Injunctive Relief And To Usurp The Exclusive Duty Of The Chapter 7 Trustee**

40.     In apparent recognition that they lacked authority to issue the *seven Non-Party Subpoenas*, on *November 2, 2020* at *2:01 a.m.*, the Stadtmauers filed a voluminous motion (Dkt No.'s 49-51), containing 81 exhibits (Dkt No. 51)(the "November 2, 2020 Motion"), which sought "financial disclosures" from, and affirmative injunctive relief against, the Debtor and numerous alleged "Related Parties" which appeared to include

(a)     the following seven parties: (1) Dahlia Kalter, (2) Barbara Nordlicht; (3) 535 WEA; (4) the Trenor Trust; (5) 16th Avenue; (6) Jerome Management; and (7) Beachstar Partners LLC ("Beachstar"); and

(b)     any other entity under either the direct or indirect control of either the Debtor, Ms. Kalter or Barbara Nordlicht (collectively, the "Motion Related Parties")(Dkt No. 51, p. 4, ¶ 1).

41.     Moreover, although crafted as a motion for Rule 2004 discovery, the Stadtmauers additionally sought mandatory injunctive relief, including a proposed order ("Proposed Order") (Dkt No. 49, pp. 4-5) which required the Debtor and all the numerous Motion Related Parties to provide at least five business days notice to the Stadtmauers prior to any contemplated transaction exceeding $75,000 so that the Stadtmauers could have an opportunity to object to the transaction. The Proposed Order stated that:

"3.    The Debtor and Related Parties must disclose any contemplated transaction (or series of related transactions) exceeding $75,000, with at least five business days' notice to provide an opportunity to object." (Id, p. 5, ¶ 3)

42.    The Stadtmauers' Proposed Order further required that every thirty days, all the numerous Motion Related Parties must provide updated records for each of their existing and newly opened accounts. The Proposed Order stated that:

"2.    The Related Parties must provide updated records for each existing or newly opened account every thirty days."  (Id, ¶ 2)

43.    The Stadtmauers' request for mandatory injunctive relief against numerous non-parties was frivolous, especially since they failed to even address, much less satisfy, probability of success. Moreover, like their unlawful issuance of their seven non-party Subpoenas, the Stadtmauers again attempted to usurp the exclusive duty of the Chapter 7 Trustee, the party to bring such injunctive relief.[3]

44.    The Proposed Order further required all the numerous Motion Related Parties to "produce all records of all financial accounts held under their control, for their benefit or for which they have signature authority from June 2018 up through to the present" (Id, p. 1, ¶ 1); and to further produce all the requested documents and information to not only Stadtmauer, but to "any other party to this proceeding who requests such disclosure by written notice to the Debtor's counsel." (Id, p. 2, ¶ 4).

45.    Thus, the Stadtmauers' requested discovery was wildly over broad and again

---

[3]    *See, In re Consolidated Pioneer Mortg. Entities*, 205 B.R. 422, 425 (B.A.P. 9th Cir. 1997) ("'[s]tanding ... to enjoin the actions of a third party rests with the debtor, debtor in possession, or the trustee ...' [citation omitted] ... [t]herefore, ... a third party ... lacks standing to bring a motion for injunctive relief pursuant to § 105(a)."); *Venegas Munoz*, 73 B.R. at 285 ("standing to bring ... an action [for injunctive relief under § 105] rests on the debtor, debtor in possession or the trustee ... ).

sought to usurp the exclusive duty of the Chapter 7 Trustee by seeking discovery related to

alleged fraudulent transfers and/or third party transferees that they could seek relief from.[4]

**The Stadtmauers Tacitly Concede That Their Unlawful 2004 Motion**
**Was Sanctionable And Withdrew It To Avoid Sanctions**

46.     On November 11, 2020, Mr. Levine, counsel to the Kalter Defendants, wrote a

Safe Harbor letter to Mr. Kritzer stating that he would move for sanctions if the Stadtmauers did

not withdraw their unlawful 2004 Motion (the "November 11, 2020 Safe Harbor Letter")(Ex. K).

47.     On November 16, 2020, Objections were filed to the 2004 Motion by Ms.

Kolatch, counsel to Barbara Nordlicht and Beachstar Partner Partners LLC (Dkt No. 59), the

Debtor (Dkt No. 61), and the Kalter Defendants (Dkt No. 63).

48.     Later that night, the Stadtmauers, in apparent recognition that their 2004

Motion was sanctionable, filed a Notice of Withdrawal of the Motion (Dkt No. 62).

**The Stadtmauers Supported The Trustee's Retention Of Steptoe To Prosecute**
***All Claims In The Removed Action On Behalf Of The Debtor's Estate***

49.     On August 25, 2020, the Trustee moved to retain Steptoe as the Trustee's Special

Litigation Counsel (the "Special Counsel Motion")(Dkt No. 19) to prosecute the claims of the

estate, which included the Removed Action and therefore the fraudulent transfer, alter ego and

pre-judgment attachment claims asserted therein (Id, ¶'s 6 & 8).

50.     Moreover, in connection with the Special Counsel Motion, the Trustee submitted

a proposed Order (Dkt No. 19-2) which likewise stated that Steptoe would serve as special

litigation counsel to the Trustee to prosecute, *inter alia*, the claims asserted in the Removed

Action (Id, ¶ 4, p. 2).

---

[4]      *See, In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010); *see also, In the Matter of: TRANSMAR COMMODITY GROUP, LTD.*, 2017 WL 10966408 at p. 7 (Bankr. S.D.N.Y. June 9, 2017).

51.     Both the Stadtmauers and Steptoe **supported** the Special Counsel Motion with Kritzer submitting a Declaration ("Kritzer Dec.")(Dkt No. 19-1) confirming that Steptoe would serve as special litigation counsel to the Trustee to prosecute, *inter alia*, the claims asserted in the Removed Action, which would include the alleged fraudulent transfer, alter ego and pre-judgment attachment claims asserted therein, on behalf of the estate (Id, ¶ 3). Kritzer further confirmed that he "discussed these facts with the Stadtmauers, who have agreed to this arrangement." (Id, ¶ 10).

52.     Additionally, Steptoe, counsel to the Stadtmauers, **represented that they did "not hold any interest adverse to the Trustee, the Debtor or to the [Debtor's] estate"** (Id, ¶ 7) (emphasis added), which the Stadtmauers agreed to (Id, ¶ 10).

53.     The Trustee made clear, however, that Steptoe would continue to represent the Stadtmauers in all aspects of the Debtor's Bankruptcy proceedings, and would not represent the Trustee in any litigation that may arise as to the treatment of the Stadtmauers' claims herein (Id, ¶ 15), which Kritzer confirmed and which the Stadtmauers likewise agreed to (Id, ¶ 10).

54.     On August 28, 2020, the Trustee moved for approval of a proposed litigation funding arrangement whereby the Stadtmauers agreed to fund up to $1.4 million in litigation costs associated with the prosecution of the Removed Action in return for a super priority, administrative claim for 2x the amount, or $2.8 million from the first dollar of gross proceeds, and an additional 35% of any recovery thereafter to Steptoe ("Funding Motion")(Dkt No. 21).

55.     The Special Counsel and Funding Motions were originally scheduled for October 6, 2020 but were adjourned by the Trustee to October 21, 2020.

56.     Thereafter, on October 16, 2020, the Trustee filed a Reply in further support of the Special Counsel and Funding Motions (the "Special Counsel Reply"), confirming that upon the filing of the Petition "the claims asserted" in the State Action, now the Removed Action,

which would include the alleged fraudulent transfer, alter ego and pre-judgment attachment claims, "belonged to the [Debtor's] estate" (Dkt No. 43, p. 8), and the Trustee seeks to retain Steptoe to pursue those claims "*on behalf of the estate*" (italics in original)(Id). Neither the Stadtmauers nor Steptoe disputed the Trustee's assertions.

57.    At the October 21, 2020 Hearing on the Special Counsel and Funding Motions, the Trustee's counsel advised the Court that the Trustee was in settlement negotiations with the Settling Parties and requested an adjournment of both the Special Counsel and Funding Motions to October 27, 2020, in order to consummate the settlement. Counsel for the Stadtmauers and PPVA attended the Hearing and were put on notice of the potential settlement. Thus, the Stadtmauers' allegation that they were not consulted on the Settlement (StadtObj. p. 2) is disingenuous.

## The Trustee Enters Into A Global Settlement With The Debtor And Other Parties

58.    On October 26, 2020, the Trustee entered into a Stipulation of Settlement ("Settlement") with the Debtor, the remaining Initial Defendants, the Proposed Supplemental Defendants and Barbara Nordlicht (collectively, the "Settling Parties")(Dkt No. 52-3, & Adv. Pro. No. 20-06489 [Dkt No. 7, Ex. A]).[5]

59.    Pursuant to the Settlement, the Trustee acknowledged that "upon the filing of the Petition, "all the claims asserted in the Removed Action became property of the Debtor's estate" (Sett. p. 3); and that subject to Court approval, he is releasing the claims of the Trustee and the Debtor's estate against the Debtor and the Settling Parties, in exchange for, *inter alia*, the settlement sum of $1.5 million (the "Settlement Sum"), which the Trustee received (Id, ¶'s 1 & 4), and the waiver of claims that the Settling Parties have against the Debtor's estate (Id, ¶ 3).

---

[5]    For the Court's convenience the Settling Parties are as follows: Mark Nordlicht, Dahlia Kalter, 535 WEA, OBH, NYFLA, Gilad, Trenor Investment, Henley Investment, John Does 1-50, 16th Avenue, Trenor Trust, Jerome Management and Barbara Nordlicht.

60.     Later that day (10/26/20), as a result of the Settlement, the Trustee filed a letter on the Docket withdrawing both the Special Counsel and Funding Motions (Dkt No. 48).

61.     On November 3, 2020, the Debtor filed a copy of the Settlement as an Exhibit to his Objection to the Extension Motion. On November 6, 2020, the Trustee filed the 9019 Motion, seeking approval of the Settlement pursuant to F.R.B.P. 9019 (9019 Mot. Adv. Pro. No. 20-06489, Dkt No. 7), which was initially made returnable for December 10, 2020.

62.     The Trustee's 9019 Motion confirmed that:

(a)     upon the filing of the Debtor's petition, "all the claims asserted in the Removed Action became property of the Debtor's bankruptcy estate," which included the alleged fraudulent transfer, alter ego and pre-judgment attachment claims (Id, ¶'s 8, 16 & 31);

(b)     after the filing of the Special Counsel and Funding Motions, the Trustee and Settling Parties engaged in arms-length negotiations (Id, ¶ 19);

(c)     the Trustee received the $1.5 million Settlement Sum (Id, ¶ 22);

(d)     the Trustee is releasing all claims against the Settling Parties (Id, ¶ 22);

(e)     the Settling Parties are releasing all claims against the Trustee (Id, ¶ 23); and

(f)     the $1.5 million Settlement Sum "is the equivalent of the estate receiving $3.3 million" under Stadtmauers' "proposed funding formula" (Id, ¶ 32).

**The PPVA Parties Request An Adjournment Of The 9019 Motion**

63.     On November 19, 2020, three days after the Court's November 16, 2020 Hearing denying the Stadtmauers's Extension Motion, PPVA requested an adjournment of the December 10, 2020 Hearing on the 9019 Motion.

64.     Pursuant to PPVA's request, the Trustee adjourned the Hearing on the 9019 Motion to January 15, 2021.

**The Stadtmauers Object To The 9019 Motion, While The PPVA Parties File
A Limited Joinder To Stadtmauers' Objection; No Other Parties Object**

65.     On January 6, 2021, the Stadtmauers filed an Objection to the 9019 Motion (Adv.

16

Dkt No.'s 12-13). On January 8, 2021, PPVA filed a partial or limited joinder in support of parts

of the Stadtmauers' Objection (i.e., Parts I, II and III [A]).

66.     Revealingly, PPVA did not join in or support the Stadtmauers' allegations that the

9019 Motion (a) would violate the Stadtmauers' alleged property rights (Part III[B]), and (b)

should be denied or withdrawn in light of Mr. Stadtmauer's alleged superior offer (Part III[C])

(PPVA Obj. pp. 1-2)(Adv. Dkt. No. 14).

67.     Other than the Stadtmauers Objection and PPVA's limited joinder, no other

creditor has objected to the Trustee's 9019 Motion. Moreover, no other creditor has supported

the Stadtmauers' allegation that they have a secured claim.

**The Stadtmauers Request An Adjournment Of The 9019 Motion For A Medical
Procedure And Then Unlawfully Seek More Voluminous Discovery By Mere Letter**

68.     On or about January 11, 2021, the Trustee's counsel advised us that the

Stadtmauers were requesting an adjournment of the January 15, 2021 Hearing on the 9019

Motion due solely to a medical procedure for their co-counsel Jonathan Pasternak. Pursuant to

the Stadtmauers' adjournment request, the Trustee adjourned the Hearing on the 9019 Motion to

February 19, 2021.

69.     Despite requesting the now second adjournment of the 9019 Motion solely for a

medical procedure, on January 22, 2021, Stadtmauers' other co-counsel, Kritzer, wrote a letter

unlawfully seeking voluminous discovery by mere letter, including 37 different discovery

requests to the Settling Parties and numerous non-parties, consisting of (a) 19 document requests,

(b) four interrogatories, and (c) 14 Subpoenas to non-parties, with a week to respond  (the

"January 22, 2021 Discovery Letter")(Ex. L).

70.     Moreover, the Stadtmauers again sought to usurp the exclusive duty of the

Chapter 7 Trustee by propounding at least eight document requests relating to alleged transfers.

## I. THE SETTLEMENT MUST BE APPROVED AND THE STADTMAUERS' OBJECTION MUST BE OVERRULED

**A.      Stadtmaeur's Purported Superior Offer To Buy The Trustee's Claims Is Invalid, Since He Seeks To Pursue The Claims On His Own Behalf**

71.      Stadtmauer initially argues that the Trustee's 9019 Motion should be denied because he is purportedly making a higher and better offer of $2 million to buy the Trustee's claims subject to the Settlement, which he will pursue on his own behalf (StadtObj. pp. 1, 3 & 38). Revealingly, Stadtmauer fails to cite to any legal authority permitting his purported offer.

72.      Preliminarily, only the Trustee has standing and/or authority to bring avoidance actions and claims. *In re McGuirk*, 414 B.R. 878, 879 (Bankr. N.D. Ga. 2009).

73.      Thus, "absent extraordinary circumstances, a Trustee cannot sell, transfer or assign the right to assert and maintain an estate's avoidance action to an individual creditor." *McGuirk*, 414 B.R. at 879; *see also, In re Metropolitan Elec. Mfg. Co.*, 295 B.R. 7, 12 (Bankr. E.D.N.Y. 2003)(cases entertaining a request for a Trustee's sale or transfer of avoidance actions, powers or causes of action to a single creditor "are rare, and are rarely granted").

74.      Moreover, a Trustee will be precluded from selling claims where the creditor intends to pursue the claims on his own behalf. *In re Boyer*, 372 B.R. 102, 105 (D. Conn. 2007), *aff'd*, 328 Fed. Appx. 711 (2d Cir. 2009)("The sale or assignment of avoidance claims to an objecting creditor is not permitted if the creditor intends to pursue the claims on its own behalf"); *McGuirk*, 414 B.R. at 880 (rejecting creditor's offer to buy Trustee's avoidance claims where the creditor was seeking to bring the "avoidance claims in its own name").

75.      Here, Stadtmauer intends to buy the Trustee's claims to bring in his own name (StadtObj. pp. 1, 3 & 38). Thus, Stadtmauer's purported higher and better offer is invalid and therefore not a basis to deny the Trustee's Settlement. *See, Boyer*, 372 B.R. at 103-106 (upholding Chapter 7 Trustee's settlement involving claims against individuals and entities

18

associated with the Debtor despite creditor Republic's higher and better offer to buy the claims, since Republic sought to pursue the "claims on its own behalf").

**B.      Even If Stadtmaeur Could Revise His Offer To Seek Derivative Standing, It Would Still Not Be In the Best Interests Of The Estate Since Stadmauer Is Conflicted, Highly Antagonistic Towards The Potential Defendants, And It Would Delay The Conclusion Of The Bankruptcy Indefinitely**

76.      To the extent that Stadtmauer attempts to revise his offer at this late stage to pursue the claims on behalf of the Debtor's estate, it should not be considered, especially since the 9019 Motion was initially filed way back on November 6, 2020 (Adv. Dkt No. 7).[6] Even if it is considered, his purported offer still lacks merit for the reasons set forth below.

77.      As a threshold matter, a creditor cannot pursue claims on behalf of the Debtor's estate, unless (1) the Chapter 7 Trustee consents, and (2) and the Court finds that the sale or assignment is (a) in the best interest of the Debtor's estate, and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. *Boyer*, 372 B.R. at 106; *accord*, *Metropolitan*, 295 B.R. at 12.

78.      Courts have found that a Trustee's proposed sale of claims is not in the best interest of the Debtor's estate or necessary and beneficial to a fair and efficient resolution of the Bankruptcy proceedings, where (as here)

(a)      there is animosity between the proposed buyer and the potential defendants. *Metropolitan*, 295 B.R. at 14-15 (denying proposed sale of avoidance claims where, *inter alia*, the proposed buyer and proposed defendants have been at odds and there is animosity between the parties); *see also*, *In re Starr*, 2012 WL 2921375 * 3 (Bankr. N.D. Ohio July 17, 2012) (denying proposed sale of avoidance claims where, *inter alia*, the Court was concerned that the proposed buyer was seeking to grind an axe with the debtor's former spouse); or

(b)      the creditor seeking to bring the litigation has a conflict of interest with the estate.

---

[6]      As stated, the Debtor actually filed the Settlement three days earlier on November 3, 2020 (Dkt No. 52-3).

19

*Metropolitan*, 295 B.R. at 14 ("As the Second Circuit has recognized, 'in order for any creditor ... to obtain standing under *Commodore*, the court must find that the creditor's interest in bringing the litigation do not conflict with those of the estate ... [g]iven the facts of this case, the Court cannot conclude that the interest of Joseph Shelley [the proposed buyer] in bringing the Claims do not conflict with the estate's interests"); *Starr*, 2012 WL 2921375 * 3 (creditor bank is conflicted); or

(c)      it will delay the conclusion of the case indefinitely, as opposed to ending the litigation and distributing funds available to creditors which is in the estate's best interests. *Metropolitan*, 295 B.R. at 15 ("giving Joseph Shelley another avenue to pursue against the James Shelley Group is clearly not necessary and beneficial to the fair and efficient resolution of this bankruptcy estate. It will only delay the conclusion of this case and the case would have to remain open for quite some time if the [sale] is granted ... [whereas] [p]utting an end to litigation in this bankruptcy case and distributing the funds available to creditors is in the best interests of this estate"); *Starr*, 2012 WL 2921375 * 3 ("There is no indication how long the litigation would last").

79.      Here, there is more than mere animosity between the parties, as Stadtmauer

has repeatedly sought to harass the Debtor and the other Settling Parties by, *inter alia*,

(a)      unlawfully issuing the seven Non-Party Subpoenas in the Bankruptcy Case to Ms. Kalter, Barbara Nordlicht, 16th Avenue, NYFLA, Hutton, MCB, and IFEB with no legal basis or authority;

(b)      unlawfully obtaining documents from MCB based on one of the seven Non-Party Subpoenas;

(c)      improperly refusing to withdraw the unlawful Subpoenas to MCB, IFEB and Hutton until directed to do so by this Court at the November 10, 2020 Conference;

(d)      filing the November 2, 2020 Motion which unlawfully sought, *inter alia*, mandatory injunctive relief against numerous non-parties without any showing of probability of success;[7]

(e)      filing the November 2, 2020 Motion which unlawfully sought, *inter alia*, voluminous and wildly over broad discovery;

---

[7]      As stated, the Statdmauers sought mandatory injunctive relief against at least seven specific non-parties, Ms. Kalter, Barbara Nordlicht, 535 WEA, the Trenor Trust, 16th Avenue, Jerome Management, and Beachstar, and also against any other entity under either the direct or indirect control of either the Debtor, Ms. Kalter or Barbara Nordlicht (Dkt No. 51, p. 4, ¶ 1).

(f)      filing the November 2, 2020 Motion to usurp the duty of the Chapter 7 Trustee by seeking (1) mandatory injunctive relief against numerous non-parties, and (2) Rule 2004 discovery relating to alleged fraudulent transfers and/or third party transferees that they can seek relief from;

(g)      tacitly conceding that their November 2, 2020 Motion was sanctionable by withdrawing it after receipt of Mr. Levine's November 11, 2020 Safe Harbor Letter threatening sanctions;

(h)      requesting a second adjournment of the January 15, 2021 Hearing on the Trustee's 9010 Motion solely because of a medical procedure for their co-counsel, and then using the adjournment to issue the January 22, 2021 Discovery Letter which unlawfully sought more voluminous discovery requests by mere letter, including 37 different discovery requests to the Settling Parties and numerous non-parties, consisting of (a) 19 document requests, (b) four interrogatories, and (c) 14 Subpoenas to non-parties, with a week to respond;

(i)      contacting at least two of the Debtor's former colleagues during the Bankruptcy and telling them that the "Bankruptcy is a sham"; and

(j)      threatening the Debor back in 2016 that he would file a Complaint with the Government that "would bring the whole Fund crashing down."

80.      Moreover, Stadtmauer clearly has a conflict of interest with the estate. In fact, Stadtmauer remarkably confirms his conflict in his Objection, disputing for the first time the Trustee's exclusive right to assert the alter ego claim herein, as confirmed by the Second Circuit's ruling in *In re Tronox Inc.*, 885 F.3d 84, 100 (2d Cir. 2017)(StadtObj. pp. 6 & 37-38).

81.      In essence, Stadtmauer asserts that he has the right to assert the alter ego claim on behalf of himself, as opposed to the Trustee asserting the alter ego claim on behalf of all creditors, which clearly puts him in conflict with the Debtor's estate and binding Second Circuit precedent in *Tronox*.

82.      Nor is Stadtmauer's conflict an isolated event, as he has repeatedly demonstrated other conflicts against the Debtor's estate on multiple occasions, including by, *inter alia*,

(a)      asserting the Constructive Trust Claim in the Supplemental Complaint which

21

stated that the ***Debtor's assets***, including all assets that are traceable to the Debtor or his alter ego entities or equitably owned by the Debtor, are held in a ***constructive trust*** for the ***Stadtmauers*** (SuppCompl. ¶'s 105-107), to the exclusion of all the Debtor's other creditors;[8]

(b)    attempting in the seven Non-Party Subpoenas to usurp the exclusive duty of the Chapter 7 Trustee by seeking discovery related to the alleged fraudulent transfers;

(c)    attempting in the November 2, 2020 Motion to usurp the exclusive duty of the Chapter 7 Trustee by seeking (1) mandatory injunctive relief against numerous non-parties, and (2) Rule 2004 discovery relating to alleged fraudulent transfers and/or third party transferees that they can seek relief from;

(d)    attempting in the January 22, 2021 Letter to usurp the exclusive duty of the Chapter 7 Trustee by propounding at least eight document requests relating to alleged transfers;

(e)    directing his counsel, Steptoe, to negotiate the financing agreement for him ***against the Trustee, Debtor's estate and other creditors***, which provided Statdmauer, a disputed creditor, with a superpriority, administrative claim for 2x the funds that he provides up to $2.8M from the first dollar of gross proceeds (ECF No. 21, ¶'s 13-14); and

(f)    directing his counsel, Steptoe, to negotiate the contingency agreement for him and Steptoe ***against the Trustee, Debtor's estate and other creditors***, which provided Steptoe with (1) 35% of any recovery of any gross proceeds, after Stadtmauer received his 2x recovery; and (2) additional funds to be negotiated up to 35%, for ***any reduction of any other creditor claim*** (ECF No. 19, ¶'s 21-22).

83.    Stadtmauer's purchase of the Trustee's claims will also delay the conclusion of the case indefinitely, especially since he ***admits*** that (a) "***extensive discovery remains to be taken***" (StadtObj. p. 27)(emphasis added), and (b) there will have to be a "***trial***" (Id, p. 8) (emphasis added).

84.    Even further confirming Stadtmauer's admission that ***"extensive discovery remains to be taken***" (emphasis added), he has repeatedly attempted to propound voluminous discovery to the Debtor, the remaining Settling Parties and numerous other non-parties, as

---

[8]    *See, In re Flanagan,* 503 F.3d 171, 181 (2d Cir. 2007)("any property that the debtor holds in constructive trust for another is excluded from the estate"; "[a] constructive trust thus places its beneficiary ahead of other creditors with respect to the trust *res*"; "[t]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with respect to the trust *res*.")(italics in original). In apparent recognition of this conflict, the Stadtmauers failed to attach the Supplemental Complaint as an Exhibit to their Objection.

demonstrated by (a) the seven Non-Party Subpoenas; (b) the November 2, 2020 Motion; and (c) the January 22, 2021 Discovery Letter.

85.     Moreover, the Stadtmauers have filed a motion for approval of the Supplemental Complaint which seeks to add the Proposed Supplemental Defendants as ***new parties*** to the Removed Action. If the  Stadtamauers' motion is granted, then the Proposed Supplemental Defendants will need time to first retain counsel and then to respond to the Supplemental Complaint, which will further delay the proceedings.

86.     In fact, the Stadtmauers' admit that protracted litigation is possible (StadtObj. p. 35); and their initial litigation against the Debtor on the guaranty, which is now pending and stayed in the District Court, dates back to 2016.

**C.      Stadtmauer's Proposed Order is Not "Superior," Since It Is
Based Solely On Conditional And Future Payments And Ignores
That The Settlement Defendants Are Waiving Their Claims**

87.     Wholly aside from all the prior arguments, Stadtmauer's proposed offer is not "superior," for multiple reasons as set forth below.

88.     First, Stadtmauer's proposed $2 million offer is based solely on conditional and future payments. Indeed, Stadtmauer is not putting up any money now.

89.     Rather, he is only offering to put up (a) 10%, or $200,000, within 48 hours of execution of a potential formal agreement with the Trustee, and (b) the back 90%, or $1,800,000, upon potential approval of the transaction pursuant to §'s 363(b) & (f) (StadtObj. p. 3).

90.     Thus, Stadtmauer's proposed offer is merely conditional, since it is based on events which may never occur. Even if the conditions do occur, it could still take months and months to consummate. In fact, the Stadtmauer admitted that it "***took weeks to negotiate***" the agreements for the proposed Special Counsel And Funding Motions (Stadt Rep. ExtMot. [Dkt No. 57], p. 14)(emphasis added). Conversely, the Trustee demanded that the Settling Parties put

up the full $1,500,000 within a few days, which they did and which the Trustee has been holding

in escrow since October 26, 2020.

91.    Furthermore, Stadtamuer ignores that the Settlement consists of not only the

$1,500,000 Settlement Sum, but also the waiver of all claims that the Settling Parties have

against the Debtor's estate. In fact, the Stadtmauers repeatedly admit that Barbara Nordlicht, her

late husband, and Ms. Kalter, have advanced substantial funds to or on the Debtor's behalf

(StadtObj. pp. 19 & 28). In contrast, the Stadtmauers have refused to waive any of their alleged

unsecured claims, and will presumably seek to take back a portion of their purported offer

through their unsecured claims; and will presumably seek to object to other claims to grab back

even more money from their proposed offer.

92.    Thus, based on all of the foregoing, even if Stadtmauer could revise his purported

offer at this late stage to seek derivative standing, it would still not be in the best interests of the

Debtor's estate or necessary and beneficial to a fair and efficient resolution of the Bankruptcy

proceedings, and therefore not a basis to deny the Trustee's Settlement.[9]

---

[9]    Courts have also denied the Trustee's sale of claims on the ground that a buyer lacks the training
and qualifications of a government appointed Chapter 7 Trustee. *McGuirk*, 414 B.R. at 879 ("The Bankruptcy Code
gives the trustees special powers to fulfill their primary duty of marshalling asserts for the benefit of the estate. A
Chapter 7 trustee is appointed and trained by the United States Trustee and must have certain qualifications to
exercise the role of a panel Chapter 7 Trustee").

The Court's rationale is especially applicable here since *Stadtmauer is a convicted felon who went to
federal prison for tax evasion. See, United States v. Stadtmauer, 620 F.3d 238, 242 (3d Cir. 2010), and a
suspended attorney*. Moreover, the Court has already noted that counsel for the Stadtmauers misrepresented "either
the law or the facts" at least three times in matters before the Court in this Case, including issuing improper
Subpoenas with no underlying proceeding (see below), filing the Extension Motion by Notice of Presentment "which
was inappropriate," and misciting legal authority (11/16/20 Trans. pp. 9 [L's 22-25], 10[L-1], 13[L's 16-25], 14 [L-
1], 21[L's 24-25], & p. 22[L-1])(Ex. G). Additionally, and as shown herein, the Stadtmauers have committed
numerous improper acts and asserted substantial false statements.

The Stadtmauers also acted in bad faith prior to the Bankruptcy. By way of background, the Stadtmauers
were limited partner investors in certain Platinum Partners hedge funds since 2005. Stadtmauer threatened the
Debtor with an alleged complaint to the government, warning that he "would bring the whole fund crashing down."
Fearing that Stadtmauer would "invent information" and that any public investigation into the fund could be
detrimental to the Platinum funds and their investors, notes were issued from the Platinum Funds to the Stadtmauers
on or about May 27, 2016, which were guaranteed by the Debtor. Stadtmauer drove home his threat, by threatening
the Debtor with another time that he used the threats of criminal prosecution to get what he wanted: when Stadtmauer
was facing the government investigation in his case, he bragged that he extorted his boss and brother-in-law Charles
Kushner for $2 million by telling Mr. Kushner that he "knew where all the bodies were buried" in the Kushner
organization and would reveal it to the government if Mr. Kushner did not advance funds for Stadtmauer's defense.

93.     Moreover, in extending derivative status, the Second Circuit has "emphasized the importance of the debtor in possession/trustee's continuing participation." *In re Milazzo*, 450 B.R. 363, 372 (Bankr. D. Conn. 2011). "Consequently, a proposal to permit a creditor to pursue an avoidance, 'without the Trustee's supervision and participation, does not pass muster.'" *Id* at 372 (*quoting, Metropolitan*, 295 B.R. at 13).

94.     Here, Stadtmauer's purported offer seeks to pursue the Trustee's claims without the Chapter 7 Trustee's supervision and participation, which provides yet another ground to reject his offer.

95.     As further stated, a creditor can not pursue claims on behalf of the estate unless the Trustee consents. Additionally, consent by the Trustee based solely on the potential to bring assets into the estate may not be sufficient. *Starr*, 2012 WL 2921375 * 2 (the Trustee's consent is not with commitment; rather he believes his fiduciary obligations require him to accept an offer that could potentially bring assets into the estate); *Metropolitan*, 295 B.R. at 13-14 ("This leads the Court to conclude that the Trustee consents merely to the sale of the Claims in order to bring funds to the estate").

96.     Here, it appears that the Trustee's consent is based solely on his belief that his fiduciary obligations require him to accept an offer that could ***potentially*** bring more assets into the Debtor's estate (Trustee Reply ¶'s 3 & 16)(Adv. Dkt No. 16), which may not be sufficient, especially since Stadmauer is not putting any money up, and his proposed offer is based solely on conditional and future payments.

---

Stadtmauer told the Debtor that he "would not hesitate" to do to the Debtor what he had threatened to do to Mr. Kushner. Thus, the ***Stadtmauers never actually loaned any money to the Platinum Funds, much less to the Debtor***. Rather, the ***Stadtmauers forced the conversion of their equity investments (dating back to 2005) into fictitious loans which were guaranteed by the Debtor in May 2016***. Based on the foregoing, the Stadtmauers acted in bad faith, and their claim is disputed and subject to attack as a fraudulent conveyance (*See generally*, Dkt No. 36, ¶'s 15-16).

97.     Thus, based on all of the foregoing, even if Stadtmauer could revise his purported offer at this late stage to pursue claims on behalf of the estate, it would still not be a basis to deny the Trustee's Settlement.

**D.      Stadtmaeur's Purported Offer To Buy The Trustee's Claims Is An Improper Attempt To Evade The Court's November 23, 2020 Order Which Denied Stadtmauers' Extension Motion To Object To The Debtor's Discharge _With Prejudice_ And The Strict Deadlines of F.R.B.P. 4004**

98.     Even if Stadtmauer could revise his purported offer to seek derivative standing and which is also in the best interests of the Debtor's estate and necessary and beneficial, it would still run afoul of F.R.B.P. 4004 and the Court's November 23, 2020 Order.

99.     Pursuant to the November 23, 2020 Order, the Court, _inter alia_, expressly denied _with prejudice_ the Stadtmauers' request for an extension of time to object to the Debtor's discharge under 11 U.S.C. § 727(a) (Dkt No. 67).

100.     Moreover, in apparent recognition of the validity of the November 23, 2020 Order, the Stadtmauers' failed to either appeal or move to reargue, and are now time-barred from doing so.

101.     Additionally, the Stadtmauers previously admitted that the Debtor's Objection to the Extension Motion transformed it into a contested matter under F.R.B.P. 9014. _See_, Dkt No. 55, p. 3; _see also_, _In re Kramer_, 492 B.R. 366, 370 (Bankr. E.D.N.Y. 2013).

102.     Thus, the Court's November 23, 2020 Order was entered in a contested matter, in which the Stadtmauers filed at least four pleadings over the course of 42 days (from 10/5/20 to 11/16/20), including a 19 page Reply with Exhibits A-K (Dkt No.'s 40, 46, 54 & 57), and after oral argument and a Hearing.

103.     It is axiomatic that a dismissal with prejudice is a complete adjudication on the merits and entitled to res judicata effect. _Cleveland v. Higgins_, 148 F.2d 722, 724 (2d Cir. 1945).

26

Additionally, res judicata applies "'not only to all matters pleaded, but to all that might have been' and 'not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit' [citations omitted]." *Teltronic Services, Inc., v. L M Ericsson Telecommunications, Inc*., 642 F.2d 31, 35 (2d Cir. 1981). The res judicata bar also applies to all those in privity with the litigating parties. *Spavento v. U.S.*, 891 F.Supp. 173, 174 (S.D.N.Y. 1995).

104.    In the Stadtmauers' 19 page Reply they ***repeatedly alleged***, *inter alia*, that ***the Debtor had fraudulently concealed property and assets, including through Dahlia Kalter, 16th Avenue and Barbara Nordlicht*** (Dkt No. 57, pp. 8-12). Thus, the Stadtmauers should now be precluded from re-litigating those issues.

105.    Moreover, pursuant to § 727(a), a creditor can object to a debtor's discharge on numerous grounds, including where the debtor has fraudulently transferred or concealed property of the debtor within one year before the filing date of the petition. 11 U.S.C. § 727(a)(2)(A).

106.    But the one year look back period can be extended to transfers that occur beyond one year where the debtor has concealed the transfer. *See, In re Ritchie*, 543 B.R. 311, 319-321 (Bankr. D. N.M. 2015)(attempting to extend back three years).

107.    Thus, even if Stadtmauers had not already raised fraudulent transfer and/or concealment issues (which is not the case), they could have and should now be precluded from doing so on this ground as well.

108.    Here, the essence of the claims that Stadtmauer seeks to buy from the Trustee are based on the Debtor's same alleged fraudulent transfers and/or concealment of property.

109.    Thus, Stadtmaeur's purported offer to buy the Trustee's claims is an improper attempt to evade the Court's November 23, 2020 Order and should not be permitted.

110.    Moreover, "F.R.B.P. 4004(a) mandates that in a Chapter 7 case complaints

27

objecting to discharge must be filed no later than 60 days after the first date for the section 341(a)

creditor's meeting unless the time is extended pursuant to Rule 4004(b)." *In re Stout*, 262 B.R.

862, 865 (Bankr. D. Col. 2001).

111.    Additionally, "[t]he time restrictions of Rule 4004(a) have been treated as strict

deadlines." *Id*; *accord, In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996)(the deadline for

objecting to discharge under FRBP 4004 "is an inflexible and mandatory rule, one not subject to

a court's discretion").

112.    In *Chalasani*, the Second Circuit ruled that a secured creditor which had failed to

timely comply with FRBP 4004 could not substitute or intervene for a plaintiff in an adversary

proceeding objecting to the debtor's discharge.

113.    The Second Circuit supported its ruling by noting that since "strict construction of

the [FRBP 4004] deadline bars the institution of additional actions," it likewise bars

"intervention or substitution" "to evade the time limits of FRBP 4004, "which are designed to

bring finality to a bankruptcy proceeding" *Id*, at 1312.

114.    Here, like the secured creditor in *Chalasani*, the Stadtmauers failed to comply

with the strict deadlines of FRBP 4004. Moreover, although the Court in *Chalasani* limited its

ruling to prevent parties that failed to comply with FRBP 4004 from substituting or intervening

in actions objecting to discharge, its rationale should apply here as well, especially since the

Stadtmauers are seeking to substitute and intervene for the Chapter 7 Trustee to continue the

Removed Action, as opposed to permitting the Settlement which would bring finality to the

Removed Action and enable the Debtor to move forward to obtain a fresh start in life.

115.    Thus, based on all of the foregoing, the Stadtmauers should not be permitted to

buy the Trustee's claims, since it is an impermissible attempt to end-run the Court's November

23, 2020 Order which denied Stadtmauers' Extension Motion to object to discharge **with**

**prejudice** and the strict deadlines of FRBP 4004.

E.      **The 9019 Motion Must Be Granted Under The *Iridium* Factors**

116.    As shown, the Stadtmauers' purported superior offer to buy the Trustee's claims is

invalid for numerous reasons. Thus, the only issue is whether the Settlement satisfies the *Iridium*

factors, which it clearly does for the reasons set forth below.

(1)     **The Stadtmauers Tacitly Concede That The Settlement Was The Product
        Of Arms-Length Bargaining, Which Weighs In Favor Of Approval**

117.    The Stadtmauers admit that one of the seven *Iridium* factors is "(7) 'the extent

to which the settlement is the product of arms-length bargaining.' [citation omitted]" *In re*

*Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007)(StadtObj. p. 29).

118.    Moreover, the Trustee asserted in the 9019 Motion that the Settlement was the

result of "arms-length negotiations" (Adv. Dkt No. 7, ¶ 19).

119.    The Stadtmauers' 45 page Objection fails to dispute the Trustee's assertion and/or

to even address this factor at all. Thus, the Stadtmauers tacitly concede that the Settlement was

the result of arms-length negotiating, which supports approval of the Settlement.

(2)     **The Stadtmauers Admit That Both The Trustee And His Counsel Are
        Experienced Bankruptcy Professionals, And The Court Is Eminently
        Qualified, Which Weighs In Favor Of Approval**

120.    The Stadtmauers admit that another of the seven *Iridium* factors is "(5) 'the

competency and experience of counsel' supporting and '[t]he experience and knowledge of the

bankruptcy judge' reviewing, the settlement." *Iridium*, 478 F.3d at 462 (StadtObj. p. 29).

121.    The Stadtmauers further admit that the Trustee, Mark Tulis, and his counsel,

Salvatore LaMonica, are "experienced bankruptcy professionals," and the Court is "eminently

qualified to determine bankruptcy matters" (StadtObj. p. 36), which factor likewise supports

approval of the Settlement.

> **(3)** **The Litigation Will Be Complex, Protracted And Subject to Delay,**
> **Since The Stadtmauers Sought To Add More Defendants And**
> **Admit That It Will Require Extensive Discovery And A Trial,**
> **Which Weighs In Favor Of Approval**

122.     The Stadtmauers admit that another of the seven *Iridium* factors is "(2) the

likelihood of complex and protracted litigation, 'with its attendant expense, inconvenience, and

delay,' including the difficulty in collecting on the judgment." *Iridium*, 478 F.3d at 462

(StadtObj. p. 29).

123.     The Stadtmauers further admit that "***extensive discovery remains to be taken***"

(StadtObj. p. 27)(emphasis added), and there will have to be a "***trial***" (Id, p. 8)(emphasis added),

which confirms that it is, at the very least, likely that the litigation will be complex and protracted

and subject to delay. This is further evidenced by Stadtmauer's repeated attempts to propound

unlawful and voluminous discovery to the Debtor, the remaining Settling Parties and numerous

other non-parties, as demonstrated by (a) the seven Non-Party Subpoenas; (b) the November 2,

2020 Motion; and (c) the January 22, 2021 Discovery Letter.

124.     Moreover, the Stadtmauers filed a motion for approval of the Supplemental

Complaint which sought to add at least three more Proposed Supplemental Defendants as ***new***

***parties*** to the Removed Action. If the motion is granted, then the Proposed Supplemental

Defendants will first need time to retain counsel and to respond to the Supplemental Complaint,

which will subject the litigation to even further delay.

125.     Additionally, the Stadtmauers allege that there are forged documents (StadtObj.

pp. 10-11) which will require expert testimony. Furthermore, expert testimony is often required in fraudulent conveyance law as well, as pointed out by the Trustee's 9019 Motion (9019 Mot. ¶ 32); all of which will subject the litigation to further delay.

126.    In fact, the Stadtmauers' admit that "'protracted litigation' is possible (StadtObj. p. 35); and additional litigation would incur additional administrative expenses which will reduce distributions to creditors.

127.    In regards to the difficulty in collecting, the Stadtmauers admit that 535 WEA, the primary asset, lacks equity as it is subject to a first mortgage held by Wells Fargo for $2.5 million and a substantial second mortgage of at least $7.5 million (StadtObj. pp. 16, 21 & 32). Moreover, the Stadtmauers' allegation that the difficulty in recovering is mitigated by hard assets owned by 16th Avenue (StadtObj. p. 35), omits that 16th Avenue is not even a party to the Removed Action.

128.    Based on all of the foregoing, it is very likely that the litigation will be complex and protracted and subject to delay, which factor further supports approval of the Settlement.

129.    Significantly, "[t]he prospect of complex and protracted litigation is considered an especially important factor in the context of bankruptcy." *In re Pursuit Holdings (NY), LLC*, 2019 WL 1220928 * 8 (Bankr. S.D.N.Y. March 12, 2019). Moreover, "balancing the complexity and delay of litigation with the benefits of fast resolution is related to the likelihood of success in that litigation." *In re ISE Corp.*, 2012 WL 1377085 * 8 (Bankr. S.D. Cal. April 13, 2012).

**(4)     No Parties Objected To The 9019 Motion Except The Stadtmauers And PPVA, Which Only Filed A Limited Joinder To The Stadtmauers' Objection, Which Weighs In Favor Of Approval**

130.    As to the third and fourth *Iridium* factors, the Stadtamuers basically argue that the Settlement is not in the best interest of creditors because the Settlement Sum of $1,500,000 is too low given that there are almost $1 billion in creditor claims (StadtObj. pp. 1 & 34).

131.    To date, however, the only parties to object to the 9019 Settlement are the Stadtmauers and PPVA. Moreover, PPVA only filed a partial or limited joinder in support of parts of the Stadtmauers' Objection (i.e., Parts I, II and III [A]), and did not join in or support the Stadtmauers' allegations that the 9019 Motion (a) would violate the Stadtmauers' alleged property rights (Part III[B]), and (b) should be denied or withdrawn in light of Mr. Stadtmauer's alleged superior offer (Part III[C])(PPVA Obj. pp. 1-2)(Adv. Dkt. No. 14).

132.    In *Iridium*, the Court found that the third and fourth factors weighed in favor of the Settlement where, except for one alleged administrative creditor, Mototola, no other creditors objected to the settlement. *Iridium*, 478 F.3d at 465.

133.    Thus, under *Iridium*, the fact that none of the almost $1 billion in creditor claims (StadtObj. pp. 1 & 34) have objected to the Trustee's 9019 Motion other than the Stadtmauers' and PPVA's limited joinder, weighs in favor of supporting the Settlement.

134.    Additionally, the Stadtmauers omit that the Settlement does not merely involve the payment of the $1,500,000 Settlement Sum, but also the waiver of any and all claims that the Settling Parties have against the Debtor's estate. In fact, the Stadtmauers have repeatedly asserted that Barbara Nordlicht, her late husband and Dahlia Kalter, have given substantial sums of money to the Debtor or on the Debtor's behalf (StadtObj. pp. 19 & 28).

**(5)    The Stadtmauers Misstate The *Iridium* Factor Regarding Releases, Which In Any Event Are Reasonable Herein**

135.    The Stadtmauers state the *Iridium* factor concerning releases as "(6) the 'nature and breadth of releases' to be granted under the settlement."

136.    But the Stadtmauers distort the actual *Iridium* factor regarding releases, omitting that it is limited to officer and directors. Thus, the actual *Iridium* factor states: "(6) 'the nature and breadth of releases to be obtained by ***officers and directors***" (emphasis added).

32

137.    This *Iridium* factor presumably applies to corporate debtors seeking to obtain
releases for their officers and directors which would be inapplicable herein. But even if this
factor is applicable, it would likewise support the Settlement since it contains customary release
language and waiver of claims which is fair and normal for a settlement.

**(6)    The State Court's Preliminary Rulings, Including The February 5, 2020 Ex-
Parte Order Of Attachment And The July 1, 2020 Post-Petition Order, Are
Not Law Of The Case As To The "Related Parties," Especially Since Four
Of The Related Parties Were Not Even Parties To The State Action**

138.    The Stadtmauers primarily argue that the Settlement is inadequate because the
State Court has already found that it is likely that the claims against the "***Related Parties***" will
succeed, which they further allege is the law of the case (StadtObj. pp. 2 & 30). The
Stadtmauers' allegations are incorrect and disingenuous.

139.    Preliminarily, the Stadtmauers define the "Related Parties" as the Settling
Parties (StadtObj. p. 3). But, as shown, at least four of the Settling Parties, i.e., 16th Avenue,
Trenor Trust, Jerome Management and Barbara Nordlicht, were never even parties to the State or
Removed Action.

140.    Moreover, the Stadtmauers admit that the State Court rulings were not "final"
(StadtObj. p. 5) but merely provisional (Id, p. 32). It is well-settled, however, that the law of the
case doctrine does not apply to preliminary rulings, including for either injunctive relief or an
attachment. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 129 n. 8 (1st Cir. 2006)(order
of attachment issued by State Court did not become law of the case upon removal to the District
Court); *Canaday v. Koch*, 598 F.Supp. 1139, 1151 (E.D.N.Y. 1984)("The granting of a
preliminary injunction is not a determination on the merits and does not invoke the doctrines of
res judicata or law of the case").

141.    Additionally, the law of the case doctrine does not apply to non-parties, or even to

parties that did not have a prior opportunity to litigate or that the court did not have jurisdiction over. *Bagola v. Kindt*, 131 F.3d 632, 637 (7ᵗʰ Cir. 1997). Here, as stated, the Stadtamuers omit that at least four of the Settling Parties, including Barbara Nordlicht, 16ᵗʰ Avenue, Trenor Trust and Jerome Management, were not even parties to the State Action.

142.    Thus, the State Court's preliminary rulings, including the February 5, 2020 ***Ex-Parte*** Order of Attachment and confirmatory ruling, are clearly not law of the case to any defendants, and especially not as to the four Settling Parties that were not even parties to the State Action.

143.    In fact, "a federal district court may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal." *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252 (11ᵗʰ Cir. 1988).

144.    The above case law is especially applicable herein, since the Stadtmauers' 45 page Objection fails to disclose certain critical facts concerning the State Court's preliminary rulings, including that the ***Ex-Parte*** Order of Attachment was entered ***Ex-Parte without any notice to the defendants or a Hearing***, and ***on the same day, February 5, 2020***, that the ***Stadtmauers' e-filed their Complaint to commence the State Action***; while ***Stadtmauers' motion to confirm*** was filed a mere ***two days later on February 7, 2020.***

145.    Thus, as a practical matter, the defendants were put in the difficult position of having to prove to the State Court that it erred in issuing its initial ***Ex-Parte*** ruling.

146.    The Stadtmauers also fail to disclose that the State Court's brief, three page ***July 1, 2020 Post-Petition Order*** denying the 3211(a)(7) motions to dismiss the Complaint was e-filed and uploaded on the State Court's docket on ***July 1, 2020***, ***two days after*** the Debtor's State Court counsel notified the State Court of the Debtor's Bankruptcy and the applicability of the

automatic stay, by e-filing and uploading notice of the Debtor's Bankruptcy on the State Court's docket on ***June 29, 2020*** (Ex.'s C, D & E).

147.    In apparent recognition that the State Court uploaded the July 1, 2020 Post-Petition Order after notice of the Bankruptcy, the Stadtmaeurs have ***failed to include it as an Exhibit*** despite referencing it in their Objection (StadtObj. p. 1). Moreover, the Stadtmauers did not dispute that the automatic stay applied.

148.    "[I]t is also well established that any action taken by a non-bankruptcy forum in violation of the automatic stay including judgments or decrees are legal nullities and have no force and effect." *Matter of Johnson*, 16 B.R. 193, 195 (Bankr. M.D. Fla. 1981).

149.    Moreover, the Complaint essentially alleged that the Debtor fraudulently transferred real property located at

(a)    245 Trenor Drive, which the Debtor never owned and which Dahlia Kalter bought way back in ***2003*** and transferred for estate planning purposes to the Trenor Trust in ***2012***, of which the Debtor was never a member; and

(b)    535 WEA, which the Debtor never owned and which was bought way back in ***2010*** by WEAG, of which the Debtor was never a member.

150.    Thus, there are obvious defenses to the fraudulent conveyance claims, including (a) statute of limitations, especially on the Stadtmauers' COA for a constructive fraudulent conveyance for which there is no tolling; (b) the Stadtamuers' lack of standing to assert a constructive fraudulent conveyance claim, since they were not even creditors at the time of the transfers; (c) as to the purchase of the second mortgage on 535 WEA, since there were no allegations that the initial second mortgage was fraudulent; and (d) that there was no transfer by the Debtor.[10]

---

[10]    It is fundamental that in order to state a cause of action for a fraudulent conveyance, the creditor must prove conveyances by the debtor. *See generally*, *Honor Brand Milling Co., v. Robinson*, 78 N.Y.S.2d 644, 650-651 (Sup. Ct. Erie Co. 1948)(dismissing fraudulent conveyance claim where plaintiff creditors did not plead any transfers or conveyances by the debtor); *Pae v. Nam*, 2012 WL 10008003 * 1 (Sup. Ct. Queens Co. June 21, 2012)(dismissing plaintiff's fraudulent conveyance claim because "there is no allegation of a fraudulent transfer by

151.    There are also defenses to the alter ego claim. In fact, the Stadtmauers cite to and

rely upon *Multibank, Inc. v. Access Global Capital LLC*, 594 B.R 618 (Bankr. S.D.N.Y. 2018)

for the proposition that their alter ego claim is merely a remedy (StadtObj. pp. 6-7 & 37-38).

152.    But in *Multibank*, the Court's rationale was that there is no independent cause of

action for alter ego: "[t]he New York Court of Appeals has made clear that under New York law

an 'alter ego' or 'veil piercing' argument is not a separate stand-alone cause of action."

*Multibank*, 594 B.R at 631.

153.    The Stadtmauers, however, rejected this position in the State Court (NYSCEF

Doc. No. 192, p. 24, Ft. 6)(Ex. M), which the State Court upheld (7/1/20 StCt Ord. p. 4)(Ex. E).

154.    But if the Court in *Multibank* is correct, then the State Court erred which

demonstrates yet another reason why the State Court's preliminary rulings should not be law of

the case. Moreover, it is undisputed that the Debtor was never an owner, officer or director of

either the Trenor Trust which owns 245 Trenor, or WEAG which own 535 WEA, which provides

yet another defense to the alter ego claim.[11]

155.    Additionally, although the State Court observed that the Stadtmauers showed

probability of success on the merits of a COA, the State Court never stated either what or which

COA that the Stadtmauers showed probability of success for.

---

Choi [the debtor]"); *see also*, DCL § 276-a (a petitioner must further bring a special proceeding "to set aside a
conveyance by a **debtor**" [emphasis added]).

[11]    Courts have refused to impose alter ego liability on persons that are not, and have never been,
owners, officers and/or directors of a corporation. *See, Lantau Holdings, Ltd. v. Orient Equal Intern. Group*, 2017
WL 914636 * 7 (Sup. Ct. N.Y. Co. March 8, 2017)("'An alter ego theory may not be used to impose liability on
persons who are not "owners" of the entity defendant,' [citation omitted]"), *aff'd*, 161 A.D.3d 714, 79 N.Y.S.3d 8
(1st Dep't 2018); *Old Republic Nat. Ins. Co. v. Moskowitz*, 297 A.D.2d 724, 747 N.Y.S.2d 556, 558-59 (2d Dep't
2002)("There is no basis to pierce the corporate veil as against her since she was neither an owner, director, nor a
shareholder in Metro Land"); *H & R Project Associates, Inc., v. City Of Syracuse*, 289 A.D.2d 967, 737 N.Y.S.2d
712, 714 (4th Dep't 2001)(dismissing alter ego theory, because "neither the City nor the School District is an owner
of SAARC").

156.     In any event, "[i]n evaluating the probability of success in litigation, the court is not required 'to decide the numerous questions of law and fact raised by the [the objections], but rather to canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness' [citation omitted]." *In re Woodbrige Group of Companies, LLC*, 592 B.R. 761, 772-73 (Bankr. D. Del. 2018)(parenthesis in original). Here, the Settlement does not fall below the lowest point in the range of reasonableness.

157.     In fact, even if the Stadtmauers' allegations were true (which is not the case) it still would not warrant denial of the 9019 Motion because a Court may approve a compromise or settlement "even if it believes that the Trustee ultimately would be successful." *In re Teltronics Services, Inc.*, 46 B.R. 426, 428 (Bankr. E.D.N.Y. 1984), *aff'd*, 762 F.2d 185 (2d Cir. 1985); *In re International Distribution Centers, Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1989); *see also, In re Teknek, LLC*, 402 B.R. 257, 261 (Bankr. N.D. Ill. 2009)("***Even though the likelihood of success on the merits is high***," the settlement agreement was approved to avoid increased costs of continuing litigation)(emphasis added).

158.     Based on all of the foregoing, the Settlement satisfies the *Iridium* factors.

**F.     The Stadtmauers' Attachment Claim Belongs To The Trustee Since They Previously Admitted That All Claims In The Removed Action, Including The <u>Attachment, Alter Ego And Fraudulent Transfer Claims, Belong To The Estate</u>**

159.     The Stadtmauers argue that even if the 9019 Motion satisfies the *Iridium* factors, it should still be denied because it violates their attachment rights (StadtObj. pp. 36-38).

160.     The Stadtmauers admit, however, that "certain causes of action do vest in the estate following a bankruptcy" (StadtObj. p. 37). Nevertheless, they appear to argue that their attachment claims do not (Id).

161.     But the Stadtmauers omit that they previously asserted the opposite position when

they supported, adopted and confirmed the Trustee's position in the Special Counsel and Funding

Motions. The Trustee asserted that

    (a)    Steptoe would serve as special litigation counsel to the Trustee to prosecute, *inter alia*, the claims asserted in the Removed Action (Dkt No.'s 6 & 8, & 19-2, ¶ 4), which included the fraudulent transfer, alter ego and pre-judgment attachment claims, on behalf of the Debtor's estate; and

    (b)    upon the filing of the Petition "the claims asserted" in the Removed Action, which would include the fraudulent transfer, alter ego and pre-judgment attachment claims, "belonged to the [Debtor's] estate" (Dkt No. 43, p. 8), and the Trustee seeks to retain Steptoe to pursue those claims "*on behalf of the estate*" (italics in original)(Id).

162.    Moreover, the Stadtmauers and Steptoe supported the Trustee's assertions, which

they further adopted in the Kritzer Dec. ("the Trustee seeks to employ Steptoe ... to serve as

special litigation counsel to the Trustee to prosecute the claims asserted in the [Removed

Action]", which include the fraudulent transfer, alter ego and attachment claims)(Dkt No. 19-1,

¶'s 3 & 10), especially since Kritzer confirmed that he "discussed these facts with the

Stadtmauers, who have agreed to this arrangement." (Id, ¶ 10).

163.    The assertions that Steptoe made on behalf of the Stadtmauers, coupled with

their joint support and adoption of the Trustee's position, constitute binding judicial admissions

against the Stadtmauers. *See, Brainard v. Barden*, 148 A.D.3d 1687, 50 N.Y.S.3d 656, 657-58

(4th Dep't 2017)("The admissions in plaintiff's reply ... 'constitute formal judicial admissions'

and are conclusive with respect to the facts admitted"); *see also, Holt v. Roadway Package

Systems, Inc*., 506 F.Supp.2d 194, 207 (W.D.N.Y. 2007)(plaintiff's statements, both at his

deposition and in interrogatory responses, constitute admissions which preclude his claim).

164.    Thus, the Stadtmauers are precluded from now asserting that their pre-judgment

attachment claim, which was asserted as a separate COA (4th COA), does not vest in the estate.

165.    The Stadtmauers further appear to suggest that their attachment claim does not

vest in the estate because it is based on their alter ego claim which now allege, for the very first time, belongs to them and not to the Chapter 7 Trustee (StadtObj. p. 37). But, as set forth above, the Stadtmauers supported, adopted and confirmed the Trustee's position in the Special Counsel and Funding Motions that such alter ego claims belong to the Debtor's estate and are now bound by their admissions.

166.    Moreover, the Stadtmauers acknowledge that their position, i.e., that the alter ego claim belongs to them, has been rejected by the Second Circuit in *Tronox*, 855 F.3d 84, 100, 107 (2d Cir. 2017), in which the Court ruled that the Trustee has the exclusive right to assert alter ego claims (StadtObj. p. 37). In fact, the Stadtamuers' rely upon *In re Stage Presence, Inc.*, 592 B.R. 292, 299 (Bankr. S.D.N.Y. 2018), which acknowledges that *Tronox* is binding precedent on this issue. *Id.*, at 299.

167.    The Stadtamuers also rely upon *Multibank* (StadtObj. pp. 6 & 38), where, as stated, the Court's rationale was that there is no independent cause of action for alter ego: "[t]he New York Court of Appeals has made clear that under New York law an 'alter ego' or 'veil piercing' argument is not a separate stand-alone cause of action." *Multibank*, 594 B.R at 631.

168.    But the Stadtmauers rejected this position in the State Court (Ex. M, Ft. 6), which the State Court upheld (7/1/20 StCt Ord. p. 4). Thus, the Stadtmauers are now judicially estopped from asserting this position. S*ee, In re Osborne*, 490 B.R. 75, 81-82 (Bankr. S.D.N.Y. 2013) ("'[w]hen a party assumes a certain position in a legal proceeding and convinces a court to accept that position, that party may not thereafter assume a contrary position' [citation omitted]").

169.    The Stadtmauers further appear to argue that their attachment claim can not vest in the estate because it is a secured lien. But, as shown, the Stadtmauers previously admitted that their attachment claim belongs to the estate, as well as their fraudulent transfer and alter ego claims. Additionally, none of the other creditors have supported the Stadtmauers' assertion that

their attachment claim is a secured lien. In fact, and as stated, PPVA expressly declined to join in on that position.

170.    Moreover, it is undisputed that legal title to (a) 245 Trenor Drive is in the name of the Trenor Trust; and (b) 535 WE is in the name of WEAG. Thus, the Stadtamuers' claim is essentially that the Debtor is allegedly the owner of the entities that own the real property, which, as shown below, would effectively be an ownership interest in personalty and not real property.

171.    Indeed, in analogous situations involving notices of pendency, Courts have repeatedly ruled that where an action involves a claim or dispute to the ownership of a legal entity (such as a corporation or limited liability company) which owns real property, that the claim is still deemed to be an action concerning personal property and does not affect the "title to, or the possession, use or enjoyment of real property." *5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 322-23 (1984)(cancelling notice of pendency based on specific performance claim and holding that even "when the transaction was for the sale of stock in a corporation whose sole or primary asset was real estate", such suits are "outside the scope of CPLR 6501"); *Sealy v. Clifton, LLC,* 68 A.D.2d 3d 846, 890 N.Y.S.2d 598, 600 (2d Dep't 2009)(dispute between members does "not support a notice of pendency, as '[a] membership interest in the limited liability company is personal property,' and '[a] member has no interest in specific property of the limited liability company").[12]

172.    In apparent recognition of this, the Stadtmauers allege that they levied upon the interests in LLC's and partnerships (StadtObj. pp. 26-27).

---

[12]    *See also, Maxwell Capital Group, LLC v. Josovits,* 2016 WL 4059329 * 1 (Sup. Ct. Kings Co. July 25, 2016)(cancelling notice of pendency because plaintiff's claim to compel defendants to transfer their membership interests in the entity that owns the real property did not affect the real property); *Mew Equity LLC v. Sutton Land Services, L.L.C.*, 37 Misc.3d 1225(A), 964 N.Y.S.2d 60, 2012 WL 5933050 * 9 (Sup. Ct. Kings Co. Nov. 27, 2012)(cancelling notice of pendency and holding that membership interest in a limited liability company that owns real property, or an alleged "'profit interest'" in the real properties owned by such limited liability company does not "'affect title to, or the possession, use or enjoyment of, real property' for purposes of CPLR 6501").

173.    But pursuant to CPLR § 6214(e), a levy upon personal property will become void after 90 days, except as to property which the sheriff has taken into his actual custody, collected or received or commenced a special proceeding to compel delivery under § 6214(d). The Stadtmauers have failed to comply with these requirements, so any levy against WEAG or Trenor Trust, the respective legal owners of 245 Trenor Drive and 535 WEA, should now be void. Moreover, since the levies against the legal title holders of 245 Trenor Drive and 535 WEA are void, the levies against the underlying real property should likewise be void.

174.    Additionally, the Stadtamuers acknowledge (StadtObj. p. 5, Ft. 4) that there is legal authority which essentially states that the pre-judgment attachment is merely a claim that does not ripen into a lien until it is reduced to judgment, *A.I. Trade Finance, Inc., v. Petra Bank*, 1997 WL 29184 * 4 (S.D.N.Y. 1997)("A.I. Trade's claimed [attachment] 'lien' does not ripen until Plaintiff obtains a judgment in its favor")*; which claim can be set aside in bankruptcy. Matter of DeLancey*, 77 B.R. 424, 429 (Bankr. S.D.N.Y. 1987)(trustee, pursuant to its strong arm powers, can set aside pre-judgment attachment entered approximately a year prior to the bankruptcy filing since the attachment was not yet reduced to judgment); *see also, In re Savidge*, 57 B.R. 389, 391 (D. Del. 1986) (pre-judgment attachment entered approximately a year prior to the bankruptcy filing is merely conditional until creditor has obtained a judgment; if judgment cannot be obtained then attachment is dissolved).

175.    Here, the Stadtmauers' cannot obtain a judgment because their pre-judgment attachment claim, and/or fraudulent conveyance and alter ego claims, belong to the Trustee and are being settled pursuant to the Settlement. *See generally*, CPLR § 6224 ("An order of attachment is annulled when the action in which it was granted abates or ***is discontinued*** ...")(emphasis added).  Moreover, the Stadtmauers' real underlying claim against the Debtor is subject to attack as a fraudulent conveyance, since the Stadtmauers never actually lent any money

41

to either the Debtor or the Platinum Funds; rather the Stadtmauers merely converted their equity interests in the Platinum Funds, and then forced the Debtor to guaranty the fictitious loans which were fraudulent conveyances (*See*, Footnote 9).

## **CONCLUSION**

For all the foregoing reasons set forth herein, the Trustee's 9019 Motion must be granted and the Settlement must be approved in all respects, and the Stadtmauers' Objection must be overruled.

Dated:    New York, New York
            February 16, 2021

                                    BACKENROTH, FRANKEL & KRINSKY, LLP
                                    Attorneys for Mark A. Nordlicht

                                            /s/Abraham Backenroth
                                    By:_____
                                    Abraham Backenroth, Esq.
                                    Scott Krinsky, Esq.
                                    800 Third Avenue, 11th Floor
                                    New York, New York 10022
                                    (212) 593-1100

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Debtor's Reply to the

Stadtmauers' Objection (Adv. Dkt No.'s 12-13) to the Trustee's 9019 Motion (Adv. Dkt No. 7),

was electronically filed and served upon all those who receive electronic notification via the

Court's electronic case filing and noticing system on February 16, 2021.

Dated:   New York, New York
         February 16, 2021

                              BACKENROTH, FRANKEL & KRINSKY, LLP
                              Attorneys for Mark A. Nordlicht

                                    /s/Scott Krinsky
                              By:_____
                              Scott Krinsky, Esq.
                              800 Third Avenue, 11th Floor
                              New York, New York 10022
                              (212) 593-1100

43