**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

---

Richard Stadtmauer and Marisa Stadtmauer,

      Plaintiffs,

      —*against*—

Mark Nordlicht, Dahlia Kalter, 535 W.E.A. Group LLC, OBH 2308 LLC, NYFLA Investors LLC, Gilad Kalter Cook Islands Trust Limited, Trenor Investment Partners LP, Henley Investment Partners LP, and John Does 1-50,

      Defendants.

Index No.

**COMPLAINT**

---

## PRELIMINARY STATEMENT

1.      This is an action to collect on a debt owed by Mark Nordlicht to Plaintiffs.  To defraud and frustrate his creditors, Mr. Nordlicht has engaged in a complex, far-reaching scheme to alienate assets and property to make himself "judgment proof."  Though he managed a hedge fund for over a decade with over a billion dollars in assets under management and has substantial wealth from other professional activities and family inheritance, Mr. Nordlicht claims that he does not even hold a bank account in his name.  Instead, he has strategically placed substantially all of his assets under the names of his wife, various LLCs, trusts, overseas entities and other shell entities, which allow him to continue exercising *de facto* control and ownership over those assets while claiming that they are beyond the reach of his creditors.  Plaintiffs bring claims for constructive fraudulent transfer, actual fraudulent transfer, and reverse veil piercing to unwind Mr. Nordlicht's scheme, and Plaintiffs seek a prejudgment order of attachment pending resolution of these claims.

2.      For decades, Mr. Nordlicht and Ms. Kalter, a trusts and estates lawyer, have

1

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM    INDEX NO. 51825/2020
NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 2 of 21

shared techniques, strategies, and schemes for hiding assets with their close friends and partners

Murray and Laura Huberfeld, who are the subject of similar avoidance claims in a case pending

in Nassau County. As just one example, within days of each other, Ms. Kalter transferred a

house in New Rochelle to a Cook Islands Trust and Mr. Huberfeld transferred his interest in a

Miami Beach condo (in a building where Mr. Nordlicht and Ms. Kalter also had a residence) to

Ms. Huberfeld for nominal consideration.

3.      The families' mutual need to conceal assets flowed from Mr. Nordlicht's and Mr.

Huberfeld's fraudulent activities in connection with certain "Platinum" branded funds, including

Platinum Partners Value Arbitrage Fund, LP and Platinum Partners Value Arbitrage Fund

(USA), LP (together, "PPVA"). Those activities have led to criminal prosecutions and

convictions of both Murray Huberfeld and Mark Nordlicht.[1]

4.      In all, Mr. Nordlicht and Ms. Kalter have conspired to transfer tens of millions of

dollars of assets to offshore trusts, LLCs, and other shell companies (together, the "Shell

Companies"), over which Mr. Nordlicht exercises dominance and control but disclaims legal

ownership. Defendants have taken elaborate steps to conceal these transfers, and their full extent

cannot be known without discovery.

5.      Longstanding principles of equity bar Defendants' schemes to frustrate the

legitimate rights of creditors, and Plaintiffs bring this action to seek interim and final relief from

this Court to allow them to collect debts owed by Mr. Nordlicht.

6.      Plaintiffs are two investors in PPVA who lost millions of dollars following their

collapse. Mr. Nordlicht personally guaranteed repayment of certain promissory notes issued to

---

[1]     Mr. Nordlicht's conviction was subsequently vacated and a new trial was granted;
that ruling is presently on appeal at the Second Circuit.

2

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM
NYSCEF DOC. NO. 2

INDEX NO. 51825/2020

RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 3 of 21

Plaintiffs by PPVA, and a final award against him has issued in a related arbitration.  Mr. Nordlicht has asserted that he lacks the resources to pay the award, necessitating the filing of this action.

7.    Based on these facts, which are set forth in greater detail below, Plaintiffs seek a judgment:

a.    Awarding monetary and equitable relief against all defendants for each transfer made with the intent of shielding the assets from creditors and/or that was actually or constructively fraudulent as to Plaintiffs;

b.    Entering an interim order of attachment over certain real property in New York State for which Defendants are the legal and/or equitable owners; and

c.    Holding each Defendant liable for the full extent of the judgment against Mr. Nordlicht as his alter ego, due to, *inter alia*, his and Ms. Kalter's exercise of domination and control over funds and assets placed under the names of the Shell Companies.

## I.    THE PARTIES

8.    Plaintiff Richard Stadtmauer is a resident of the State of New Jersey.

9.    Plaintiff Marisa Stadtmauer is married to Richard Stadtmauer and is also a resident of the State of New Jersey.

10.    Defendant Mark Nordlicht is a resident of the State of New York, residing in New Rochelle, New York.

11.    Defendant Dahlia Kalter is married to Mark Nordlicht.  She is a resident of the State of New York, residing in New Rochelle, New York.  Ms. Kalter is a licensed attorney experienced in trusts and estates.  Ms. Kalter was a knowing and material participant in the

fraudulent schemes described herein.

12.     Mr. Nordlicht and Ms. Kalter have a documented history of engaging in fraudulent asset transfer schemes together.  In an action commenced in 2011 in the United States District Court for the Southern District of Florida, a shell entity called Regent Capital Partners, LLC, which was owned in substantial part by Mr. Nordlicht and Ms. Kalter (as well as their friends and partners, the Huberfelds) paid $32,000,000 to settle claims that it had knowingly helped a firm to perpetuate a Ponzi scheme by engaging in an illicit "side deal" that effectively gave it a 437% interest rate on an $11 million loan.  Consistent with the pattern of conduct alleged throughout this complaint, Mr. Nordlicht used Ms. Kalter's name in connection with that transaction in an effort to obfuscate his own involvement.  Ms. Kalter was identified as an owner and manager of Regent, even though she never dealt with Scott Rothstein, the counterparty to the transaction, and Mr. Nordlicht dealt with him extensively.  Further, all distributions made out of Regent to the Nordlicht family were paid to an account nominally held by Ms. Kalter, even though evidence in the discovery proceedings that followed showed that the money invested was known to be Mr. Nordlicht's.

13.     Defendant 535 W.E.A. Group LLC is a limited liability company organized under the laws of Delaware, with a registered address of 245 Trenor Drive, New Rochelle, New York, which is Mr. Nordlicht's and Ms. Kalter's primary residence.  Mr. Nordlicht has exercised control and domination over this entity and enjoyed the use of its assets, including the condominium at 535 West End Avenue, Unit No. 15, New York, New York.

14.     Defendant OBH 2308 LLC is a limited liability company organized under the laws of Florida, also with a registered address of 245 Trenor Drive, New Rochelle, New York.  Upon information and belief, Ms. Kalter is the sole member of OBH 2308 LLC, but Mr.

4

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM INDEX NO. 51825/2020
NYSCEF DOC. NO. 2                                                        RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 5 of 21

Nordlicht has also exercised domination and control over this entity and enjoyed the use of its main asset, an apartment in Miami Beach that served as a vacation home for the Nordlicht family.

15. Defendant NYFLA Investors LLC is a New York limited liability company with a registered address of 7 Times Square, New York, New York. NYFLA Investors LLC was founded with Mr. Nordlicht's father, Jules Nordlicht, as the entity's managing member. Jules Nordlicht passed away on or about August 6, 2018. Upon information and belief, Mr. Nordlicht currently has either *de facto* or *de jure* control over NYFLA Investors LLC.

16. Upon information and belief, Defendant Gilad Kalter Cook Islands Trust Limited is an entity organized under the laws of the Cook Islands, and Ms. Kalter is an officer of Gilad Kalter Cook Islands Trust Limited, but it is under Mr. Nordlicht's *de facto* control and domination.

17. Defendant Trenor Investment Partners LP is a limited partnership organized under the laws of the State of Nevada, for which Dahlia Kalter is the general partner, but which is under Mr. Nordlicht's *de facto* control and domination. Trenor Investment Partners LP is one of three entities that Ms. Kalter recently (and inconsistently) identified as the "owner" of Mr. Nordlicht's primary residence at 245 Trenor Drive, New Rochelle, New York.

18. Defendant Henley Investment Partners LP is a limited partnership organized under the laws of the State of Nevada, for which Mark Nordlicht is the general partner.

19. Defendants John Doe 1-50 are onshore and offshore LLCs, partnerships, trusts, holding companies, and other entities of various jurisdictions and legal statuses, all of which have been used by Mr. Nordlicht to hide assets and place them beyond the reach of his creditors, as well as family members and associates of Mr. Nordlicht for whom transfers and other

5

ownership interest have been concealed.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over each of the defendants pursuant to CPLR 301 because each of them is a resident of the State of New York.

21.    This Court has jurisdiction over defendant Gilad Kalter Cook Islands Trust Limited under CPLR 301 because it owns real estate in this county and this action concerns that real estate.

22.    Venue is proper in this Court pursuant to CPLR 503 because Defendants Mark Nordlicht and Dahlia Kalter reside in Westchester County and the property at 245 Trenor Drive is located within Westchester County.

23.    The amount in controversy exceeds $100,000 exclusive of punitive damages, interest, costs, disbursements, and counsel fees.

## FACTUAL BACKGROUND

### A.    THE UNDERLYING CLAIM AGAINST MARK NORDLICHT.

24.    Defendant Mark Nordlicht co-founded the Platinum Funds, a Manhattan-based family of hedge funds, in or around 2003.  He was originally a co-owner along with his co-founders, Murray Huberfeld and another partner.

25.    The Platinum Funds operated out of various locations in New York City.  They were managed by general partner Platinum Management (NY) LLC ("Platinum Management"), which was also co-founded by Mr. Nordlicht, Mr. Huberfeld, and another partner.  Beginning around 2003, the office of the Platinum Funds and Platinum Management was located at 152 West 57th Street, 54th Floor, New York, NY 10019.  It later moved to 250 West 55th Street, 14th Floor, New York, NY 10019.

26.    PPVA, founded in or around 2003, was Platinum Funds' signature hedge fund,

6

and was a master fund with three feeder funds.

27.    Mr. Nordlicht guaranteed a debt owed by PPVA to Plaintiffs; Plaintiffs defaulted on the debt and the guaranty was triggered.

28.    Mr. Nordlicht refused to honor the guaranty, and the matter was submitted to binding arbitration. On January 10, 2020, Hon. Bernard Fried (Ret.) issued a final award (the "Award") against Mark Nordlicht and in favor of Plaintiffs in a JAMS arbitration to enforce the Guaranty. The Award issued in the amount of approximately $15 million, with interest continuing to accrue at 11%. All counterclaims by Mr. Nordlicht were expressly and conclusively resolved against him in the arbitration, as stated in the Award.

29.    To date, the Award has not been paid in any part. Instead, Mr. Nordlicht has continued to frustrate collection efforts by relying on the tactics described in this complaint.

### B.    MR. NORDLICHT'S FRAUDULENT TRANSFERS AND HIS DOMINATION OF THE SHELL COMPANIES.

30.    Over a period of years, Mr. Nordlicht has worked to hide tens of millions of dollars in assets he accumulated through his lucrative career, most recently as an executive at a prominent New York hedge fund. Upon information and belief, Mr. Nordlicht has illegally transferred cash, securities, real estate, and other assets to the Shell Companies and to overseas accounts. These transfers have gone well beyond estate planning in scale and sophistication, were intended to make Mr. Nordlicht judgment proof, and constituted an illegal and intentional scheme to defraud Mr. Nordlicht's creditors, including Plaintiffs.

31.    Upon information and belief, each of the transfers to Mr. Nordlicht's family members and/or the Shell Companies was made for less than reasonably equivalent value, with Mr. Nordlicht receiving little or nothing in return, and while Mr. Nordlicht was insolvent. Accordingly, in addition to being actually fraudulent as described above, Mr. Nordlicht's

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM
NYSCEF DOC. NO. 2
INDEX NO. 51825/2020
RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 8 of 21

transfers to the Shell Companies were constructively fraudulent (and voidable) as to Plaintiffs.

32.     Further, upon information and belief, each of the Shell Companies was operated as an alter ego of Mr. Nordlicht.  Though the entities were typically "owned" in the name of Mr. Nordlicht's wife, he was deeply involved in managing and controlling them, including by using them to draw funds and to give the impression to Plaintiffs and the public that he had enormous personal wealth.  In its entirety, Mr. Nordlicht's use of the Shell Companies was intended to (and did) operate as a fraud against his creditors and others doing business with him by positioning him as a *de facto* owner of assets for which he would disclaim control whenever it suited him. Mr. Nordlicht, with Ms. Kalter's knowledge and cooperation, in fact exercised domination and control over the Shell Companies and each of them functioned as an alter ego.

33.     The Shell Companies are numerous and their identities and the full scope of their assets, as well as transfers to and from them, can only be ascertained through discovery.  Upon information and belief, none of the Shell Companies hold regular board, management, member, or shareholder meetings, they do not maintain accounts that are treated as genuinely separate from Mr. Nordlicht's personal property, and they otherwise do not observe corporate formalities. For example, 535 W.E.A. Group LLC has missed three years of tax payments and its current status with the Secretary of State of Delaware (its state of organization) is "Canceled – Failure to Pay Tax."

34.     On top of failing to comply with organizational requirements that must be followed to receive the protections afforded to LLCs and similar entities, the Shell Companies have been used to defraud Mr. Nordlicht's creditors, including Plaintiffs.  The following examples of activity by the Shell Companies are stated upon information and belief based on public records and other information known to Plaintiffs:

8

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
                State Court Complaint with Attachment COA    Pg 9 of 21

    a.     **535 W.E.A. Group LLC.**  This is a canceled LLC that has no business operations and has no existence other than as an *alter ego* of Mr. Nordlicht.  Its primary asset is an 8,400-square-foot luxury condominium in Manhattan's Upper West Side, located at 535 West End Avenue, Unit No. 15, New York, New York which until recently was used by the Nordlichts as a second residence.  In December 2015, Mr. Nordlicht signed a mortgage on that property to secure a purported $7.5 million obligation to Hutton Ventures LLC.  The principal of Hutton Ventures LLC, Ron Friedman, was an extremely close friend and business associate of Mr. Nordlicht's partner, Murray Huberfeld, who was involved in the purported loan by Hutton Ventures LLC.  Mr. Nordlicht's signature on the mortgage demonstrates that Mr. Nordlicht in fact had unfettered access to 535 W.E.A. Group LLC's assets, up to and including the authority to sell or assign them, despite the window dressing of his wife's ownership in name.  This means that Mr. Nordlicht owned (and owns) 535 W.E.A. Group LLC's assets under principles of equity.

    b.     **OBH 2308 LLC.**  This entity has no business operations and no genuine corporate existence.  Its sole asset was a sprawling luxury condominium at the Ritz-Carlton Bal Harbour in Miami Beach, Florida, located at 10295 Collins Avenue, No. 2308, which was used by the Nordlichts as their Florida residence.  Though Ms. Kalter was, in name, the sole manager and member of OBH 2308 LLC, Mr. Nordlicht in fact used it as his personal piggy bank.  In June 2013, Mr. Nordlicht and Ms. Kalter brought suit against Fireman's Fund Insurance Company to recover for water damage to "***their property*** located at 10295 Collins Ave., Unit 2308" under an insurance policy that had Mark Nordlicht as the named insured.  In December 2015, Mr. Nordlicht signed a

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 10 of 21

mortgage on the Miami Beach property to secure a purported $7.5 million obligation to Hutton Ventures LLC. The principal of Hutton Ventures LLC, Ron Friedman, is an extremely close friend and business associate of Murray Huberfeld, who was involved in the purported loan by Hutton Ventures LLC. Mr. Nordlicht's signature on the mortgage demonstrates that Mr. Nordlicht in fact had unfettered access to OBH 2308 LLC's assets, up to and including the authority to sell or assign the Miami Beach Ritz-Carlton condominium, despite the window dressing of his wife's ownership in name. In light of these facts, Mr. Nordlicht in fact owned (and owns) OBH 2308 LLC's assets under principles of equity.

c.      **NYFLA Investors LLC.** This entity was organized in January 2017, with Mr. Nordlicht's father, Jules Nordlicht, as its managing member. Within a week of its organization, NYFLA Investors LLC took assignment of the aforementioned mortgages on the properties at 535 West End Avenue in New York and 10295 Collins Avenue in Florida. NYFLA Investors LLC then received the proceeds of the $7.85 million sale of the Miami Beach condominium several months later. Specifically, Jules Nordlicht, acting as the member and manager of NYFLA Investors LLC, executed a full release and satisfaction of the $7.5 million mortgage on the Ritz-Carlton Miami Beach condominium on May 11, 2017, the same day that the transaction closed. That satisfaction was filed under a false name with the Miami-Dade Clerk of Court, incorrectly listing "NYFLA LLC" instead of "NYFLA Investors LLC" as the secured party, and without any reference to the debtor, OBH 2308 LLC. Jules Nordlicht passed away in August 2018, and upon information and belief, NYFLA Investors LLC was then, and is now, controlled (either *de facto* or *de jure*) by Mark Nordlicht.

10

d.    **Gilad Kalter Cook Islands Trust Limited.**  This entity is a "self-settled trust" that received a fraudulent conveyance of Mr. Nordlicht's residence at 245 Trenor Drive in New Rochelle, New York.  On November 13, 2014, Ms. Kalter transferred that residence (which was marital property in which Mr. Nordlicht held a legal and equitable interest) to Gilad Kalter Cook Islands Trust Limited.  Upon information and belief, the transfer was done through the Law Offices of Albert Kalter, P.C., a law firm consisting of Dahlia Kalter and her father, Albert Kalter.  The use of a self-settled Cook Islands trust for this purpose shows clear intent to place assets out of reach of Mr. Nordlicht's creditors.  Commentators have described the Cook Islands as a "paradise of untouchable assets,"[2] and noted that "[c]onvicted ponzi-schemer R. Allen Stanford and various corrupt government officials from around the world — used Cook Islands Trusts to protect the proceeds of their activities from defrauded victims and government pursuit."[3] The transfer of marital property into Gilad Kalter Cook Islands Trust Limited was a fraudulent transfer made with actual intent to hinder, delay, and defraud creditors.

e.    **Trenor Investment Partners LP.**  Trenor Investment Partners, another *alter ego* entity, is a Nevada limited partnership for which Dahlia Kalter is the general partner.  This entity was a shell company used to alienate assets over which Mr. Nordlicht held control and equitable title, including Mr. Nordlicht's primary residence at 245 Trenor Drive, New Rochelle, New York.

---

[2]    Leslie Wayne, *Cook Islands, a Paradise of Untouchable Assets*, N.Y. Times, Dec. 14, 2013, https://www.nytimes.com/2013/12/15/business/international/paradise-of-untouchable-assets.html.

[3]    Robert J. Mintz, *Cook Islands Trusts: Prudent Planning or Tools for Scoundrels?*, https://www.rjmintz.com/new-selected-topics-on-asset-protection-updates/cook-islands-trusts-prudent-planning-or-tools-for-scoundrels.

11

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM INDEX NO. 51825/2020
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 12 of 21

    f.    **Henley Investment Partners LP.**  Henley Investment Partners LP,

another alter ego of Mark Nordlicht, is a Nevada limited partnership for which Mark

Nordlicht is the general partner.  This entity was a shell company used to hide Mr.

Nordlicht's assets from his creditors.

## C.    MR. NORDLICHT'S *MODUS OPERANDI* FOR DEFRAUDING CREDITORS.

35.    To allow him to claim poverty to creditors while controlling substantial assets,

Mr. Nordlicht has adopted a specific *modus operandi* in his financial arrangements.  First, Mr.

Nordlicht organizes a shell company with his wife, Ms. Kalter, having nominal ownership and

control.  Second, notwithstanding his ownership in name, Mr. Nordlicht in fact controls and

dominates the shell company, directing or participating in substantially all financial decisions for

it.  Third, any funds or interests in the shell company are extracted to accounts held by Ms.

Kalter or another closely affiliated party, such as a family-owned LLC or trust.  By conducting

his affairs this way, Mr. Nordlicht enjoys all the benefits of owning very significant assets while

telling creditors they are not his.

36.    For example, Mr. Nordlicht, Mr. Huberfeld, and another party directed the

formation of an entity named Regent "through their wives" for purposes of engaging in a side

deal with a Ponzi schemer named Scott Rothstein.  Mr. Rothstein subsequently gave extensive

deposition testimony that he had dealt extensively with Mr. Nordlicht on that transaction,

without once mentioning Ms. Kalter.  Yet when funds were extracted from the Ponzi scheme to

Regent, nearly $3 million flowed into an account held in Ms. Kalter's name.

37.    Another example is Mr. Nordlicht's ownership interest in Platinum Management

(NY) LLC, which controlled the Platinum Funds.  Upon information and belief, Mr. Nordlicht's

ownership interest in Platinum Management (NY) LLC, through which the principals of the

12

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM
NYSCEF DOC. NO. 2
INDEX NO. 51825/2020
RECEIVED NYSCEF: 02/05/2020

20-06489-rdd   Doc 18-1   Filed 02/16/21   Entered 02/16/21 21:16:20   Exhibit A:
State Court Complaint with Attachment COA   Pg 13 of 21

Platinum Funds received a large portion of their compensation, was ultimately held by a trust with Ms. Kalter as the nominal trustee, but which Mr. Nordlicht in fact controlled.

38.　　Mr. Nordlicht has played similar games with his residences, as set forth in greater detail below.

### D.　　THE NEW YORK AND FLORIDA REAL ESTATE SCHEMES.

39.　　Through a series of complex financial maneuvers, Mr. Nordlicht has maintained domination, control, and *de facto* ownership over a property located at 535 West End Ave, No. 15 while claiming it is not his. The steps in this scheme are described in detail below.

40.　　According to a criminal indictment filed against Mr. Nordlicht in the Eastern District of New York, Mr. Nordlicht wrote in December 2015 "that he was ready to take $7.5 million from a second mortgage on ***his house*** to deal with the liquidity crisis" then facing the Platinum Funds.

41.　　On December 28, 2015, Mr. Nordlicht executed an agreement whereby 535 W.E.A. Group LLC granted a $7.5 million mortgage over 535 West End Avenue, Unit No. 15 to Hutton Ventures LLC. Hutton Ventures LLC is controlled by Ron Friedman, who is an extremely close friend and business associate of Murray Huberfeld. Mr. Huberfeld was involved in securing this obligation secured by the mortgage.

42.　　Also on December 28, 2015, OBH 2308 LLC granted Hutton Ventures LLC a mortgage over 10295 Collins Avenue No. 2308, Miami Beach, Florida, a sprawling luxury condominium at the Ritz-Carlton Bal Harbour. As with the Manhattan apartment, Mark Nordlicht signed the security agreement on behalf of OBH 2308 LLC. Mr. Huberfeld was involved in securing this obligation secured by the mortgage.

43.　　On January 30, 2017, Mark Nordlicht, Dahlia Kalter, 535 W.E.A. Group LLC, OBH 2308 LLC, Hutton Ventures LLC, and a newly formed entity, NYFLA Investors LLC,

13

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM
NYSCEF DOC. NO. 2

INDEX NO. 51825/2020

RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 14 of 21

entered into an agreement that transferred the mortgage on 535 West End Avenue, Unit No. 15 to NYFLA Investors LLC. NYFLA Investors LLC was organized just days before that transaction, on January 24, 2017. Mr. Nordlicht's father, Jules Nordlicht, was the member and manager of NYFLA Investors LLC. Upon information and belief, NYFLA Investors LLC has no assets or operations other than holding purported mortgage interests in properties controlled by Mr. Nordlicht (with cooperation from Ms. Kalter).

44.     NYFLA Investors LLC had as its registered address for service of process the law firm Pryor Cashman LLP, which also prepared and recorded the assignment of mortgage. The attorney at Pryor Cashman listed as the notice party is not a transactional real estate attorney. Instead, he is a white-collar defense lawyer who has extensive experience in asset forfeiture proceedings.

45.     Jules Nordlicht, the member and manager of NYFLA Investors LLC, passed away in August 2018. Upon information and belief, NYFLA Investors LLC was then, and is now, controlled (either *de facto* or *de jure*) by Mark Nordlicht.

46.     Upon information and belief, NYFLA Investors LLC purchased the **$7.5 million** mortgage on 535 West End Ave. No. 15, either directly or through a coordinated series of transfers, using the proceeds from OBH 2308 LLC's sale of the Ritz-Carlton Miami Beach condominium, which was listed in late 2016, went into contract in March 2017, and closed for **$7.85 million** on May 11, 2017.

47.     On May 11, 2017, the same day that the sale of the Ritz-Carlton Miami Beach condominium closed, NYFLA Investors LLC executed a full release and satisfaction of the $7.5 million mortgage on the property. In what appears to be an attempt to conceal Jules Nordlicht's involvement, this satisfaction was falsely filed with the Miami-Dade clerk under incorrect entity

14

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM    INDEX NO. 51825/2020
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 15 of 21

names, listing "NYFLA LLC" (instead of NYFLA **Investors** LLC) as the secured party and

Hutton Ventures LLC, a former **lender**, as the debtor. The release and satisfaction does not

come up under a search for OBH 2308 LLC or NYFLA Investors LLC in the Miami-Dade

County Clerk's records.

48.     The means by which Jules Nordlicht devised property to his son expressly shows

the parties' intent to hinder, delay, and defraud creditors. Jules Nordlicht's last will and

testament was executed on July 12, 2017, only months after the sale of the Florida Condo, the

assignment of security interests to NYFLA Investors, LLC, the newly-incorporated LLC

nominally held by Jules Nordlicht, and the false and misleading satisfaction of mortgage filing

listing "NYFLA LLC" as the secured party. The will assigned a proportionate share of the

residuary of his estate to "Mark's Trust," which is to be dissolved and distributed to Mark

Nordlicht on specified conditions: namely, that "(i) there ***were no lawsuits outstanding or***

***brought or claims asserted against MARK,*** (ii) MARK was not in jail, the subject of a criminal

or civil investigation or facing pending criminal charges, (iii) MARK had a positive net worth

(not including in MARK's assets any undistributed income or principal of MARK's Trust), (iv)

***there were no outstanding liens or levies against MARK,*** and (v) ***MARK was not delinquent on***

***the payment of any outstanding obligations,*** including loans, credit card debt, utility bills and/or

rent."

49.     This fraudulent course of conduct, which involved Defendants' abuse and

domination over Shell Companies, purports to have placed Defendants' interests in the subject

property out of the reach of creditors.

50.     535 W.E.A. Group LLC listed 535 West End Avenue, Unit No. 15 for sale on

November 29, 2018. It has since been taken off of the market, but this listing evinces

15

Defendants' desire and intent to sell the property and place substantial assets further beyond the reach of claims by Mr. Nordlicht's creditors.

51.     Mr. Nordlicht's home at 535 West End Avenue, Unit No. 15 is currently rented. On information and belief, Mr. Nordlicht uses the rental income to pay personal and living expenses.

### E.    THE COOK ISLANDS TRUST SCHEME.

52.     For many years, Mr. Nordlicht has lived in and enjoyed use of the property at 245 Trenor Drive, New Rochelle, New York.  The Trenor Drive property was originally purchased under Ms. Kalter's name.

53.     In late 2014, around the time that PPVA began experiencing serious liquidity problems, Defendants decided that Ms. Kalter's "ownership" of the Trenor Drive property would not guard it sufficiently against creditors.

54.     In an attempt to ensure that no creditors could reach the property, Ms. Kalter transferred Mr. Nordlicht's primary residence at 245 Trenor Drive, New Rochelle, New York (which was marital property in which Mr. Nordlicht held a legal interest) to Gilad Kalter Cook Islands Trust Limited with intent to hinder, delay, and defraud creditors.

55.     Upon information and belief, this transfer was conducted through the Law Offices of Albert Kalter, P.C., a law firm consisting of Ms. Kalter and her father, Albert Kalter.  In particular, Albert Kalter was the subscribing witness for the 2014 bargain and sale deed by which the Trenor Drive Property was conveyed to Gilad Kalter Cook Islands Trust Limited.

56.     The property remains titled on Westchester County tax rolls under Gilad Kalter Cook Islands Trust Limited.  But Defendants have set up so many Shell Companies that they are having trouble keeping them straight.  For example, in a 2019 petition to reduce the taxes associated with the property, Ms. Kalter listed the owner of 245 Trenor Drive *three different*

16

*ways*: first, as "Dahlia Kalter" in a form petition on page one, second, as "Trenor Investment Partners, LP" on an authorization form, and third, after crossing out "Trenor Investment Partners, LP" on that same form, as "Dahlia Kalter Trenor Trust." Nothing could be clearer evidence that these entities are all simply alter ego Shell Companies. They have no purpose other than to fraudulently alienate assets and hinder creditors.

57.    These transactions are just a few examples of Mr. Nordlicht's extraordinary efforts to move assets out of his name while keeping them within his control. Upon information and belief, the full scale of Mr. Nordlicht's deliberately concealed asset transfers dwarfs the scale of those that can be discerned from public records. Plaintiffs anticipate that discovery will reveal numerous additional transfers that were actually or constructively fraudulent as to them.

## II.    CLAIMS FOR RELIEF

### COUNT I: ACTUAL FRAUDULENT CONVEYANCE
### (AGAINST ALL DEFENDANTS)

58.    Plaintiffs repeat and re-allege paragraphs 1 to 57 as if fully set forth herein.

59.    Plaintiffs hold claims against Mr. Nordlicht.

60.    Mr. Nordlicht himself transferred, and also caused the Shell Companies and affiliated entities to distribute, millions of dollars of assets to each of his family members named herein and to other Shell Companies.

61.    These conveyances were made in bad faith and without any exchange of value.

62.    Mr. Nordlicht caused the Shell Companies to make these distributions to himself, his family members, and other companies they control with actual intent to hinder, delay or defraud Plaintiffs and other creditors. Mr. Nordlicht knew or should have known that these conveyances would hinder creditors such as Plaintiffs, and to the extent he lacked actual knowledge, he actively avoided such knowledge and failed to conduct ordinary diligence that

17

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM
NYSCEF DOC. NO. 2
INDEX NO. 51825/2020
RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 18 of 21

would have provided such knowledge.

63.     There is a close relationship between the parties to these distributions.

64.     By distributing such significant funds to close family members and entities they control, the Defendants have retained a benefit from these distributions.

65.     Accordingly, pursuant to NY DCL Sections 276, 276-a, and 278, Plaintiffs are entitled to a judgment (a) disregarding the conveyances and allowing Plaintiffs to attach or levy execution upon the property conveyed, (b) awarding Plaintiffs the value of the property, including interest and appreciation, to the maximum extent allowed by law, and (c) awarding reasonable attorney's fees incurred in this action.

## COUNT II: CONSTRUCTIVE FRAUDULENT CONVEYANCE
### (AGAINST ALL DEFENDANTS)

66.     Plaintiffs repeat and re-allege paragraphs 1 to 57 as if fully set forth herein.

67.     Plaintiffs hold matured claims against Mr. Nordlicht.

68.     Mr. Nordlicht himself transferred, and also caused the Shell Companies and affiliated entities to distribute millions of dollars of assets to each of his family members named herein and to other Shell Companies.

69.     These conveyances were made without fair consideration.

70.     These conveyances were made at a time when Mr. Nordlicht and the Shell Companies were insolvent or such conveyances rendered them insolvent.

71.     After these conveyances, Mr. Nordlicht and the Shell Companies were left with unreasonably small capital.

72.     The conveyances have been concealed from Mr. Nordlicht's creditors.

73.     Mr. Nordlicht intended or believed that he and the Shell Companies would incur debts beyond their ability to pay as they mature.

18

74.     Accordingly, pursuant to NY DCL Sections 273, 274, 275, and 278, Plaintiffs are entitled to a judgment (a) disregarding the conveyances and allowing Plaintiffs to attach or levy execution upon the property conveyed, and (b) awarding Plaintiffs the value of the property, including interest and appreciation, to the maximum extent allowed by law.

## COUNT III: REVERSE VEIL PIERCING
### (AGAINST THE SHELL COMPANIES)

75.     Plaintiffs repeat and re-allege paragraphs 1 to 57 as if fully set forth herein.

76.     Mr. Nordlicht dominated and controlled the Shell Companies and used them as if they were his own personal assets.  Without limiting the foregoing allegations, the Shell Companies failed to observe corporate formalities and were established to conceal and protect Mr. Nordlicht's assets from his creditors.

77.     Mr. Nordlicht dominated each of the Shell Companies.  If he was not the sole corporate officer, he had effective control over the corporate officers.

78.     In these circumstances, New York law treats the assets of the Shell Companies and of Mr. Nordlicht as one and the same.  *See, e.g., State v. Easton*, 169 Misc. 2d 282, 290, (Sup. Ct. 1995).

79.     Each of the Shell Companies is thus liable for Mr. Nordlicht's debts equally with Mr. Nordlicht.

80.     Further, each of Mr. Nordlicht's family members named herein are personally liable as fraudulent transferees of the Shell Companies as if Mr. Nordlicht had engaged in the transfers himself.

## COUNT IV: PREJUDGMENT ORDER OF ATTACHMENT
### PURSUANT TO NY CPLR ARTICLE 62

81.     Plaintiffs repeat and re-allege paragraphs 1 to 57 as if fully set forth herein.

19

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM    INDEX NO. 51825/2020
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 20 of 21

82.    Plaintiffs are entitled to a money judgment against defendant Mark Nordlicht, in

that a final arbitration award was issued against Mr. Nordlicht and in favor of Plaintiffs on

January 10, 2020, in the amount of $14,896,316.16 with interest continuing to accrue, and a

petition to confirm the arbitration award is currently pending with the United States District

Court for the Southern District of New York.

83.    The amount of Plaintiffs' claims against Defendants exceeds the value of any

counterclaims in that the arbitration award conclusively resolved all counterclaims against Mr.

Nordlicht, with Mr. Nordlicht taking nothing on such claims.

84.    Plaintiffs have already prevailed on the action that was submitted to binding

arbitration.  Further, it is probable that Plaintiffs will prevail in its causes of action stated in this

complaint because, as set forth in the accompanying motion for attachment, they are supported

by substantial evidence even before Plaintiffs have been able to take discovery.  Plaintiffs are

owed millions of dollars by Mr. Nordlicht, and Defendants' transfers have deprived Plaintiffs of

assets and/or property that should be subject to execution to satisfy the outstanding claims

against him.

85.    Mr. Nordlicht, along with the other Defendants, with intent to defraud his

creditors or frustrate the enforcement of a judgment that might be rendered in Plaintiffs' favor,

has assigned, disposed of, encumbered or secreted property, or removed it from the state or is

about to do any of these acts, in that they have engaged in the fraudulent transfers detailed in this

complaint.

86.    The Court should issue an order of attachment without notice, attaching (a) the

condominium located at 535 West End Avenue, Unit No. 15, New York, New York; and (b) the

FILED: WESTCHESTER COUNTY CLERK 02/05/2020 10:54 AM
NYSCEF DOC. NO. 2
INDEX NO. 51825/2020
RECEIVED NYSCEF: 02/05/2020

20-06489-rdd    Doc 18-1    Filed 02/16/21    Entered 02/16/21 21:16:20    Exhibit A:
State Court Complaint with Attachment COA    Pg 21 of 21

property located at 245 Trenor Drive, New Rochelle, New York, pending resolution of this action against Defendants.

**WHEREFORE**, Plaintiffs respectfully request that judgment be awarded against Defendants for:

a.    A prejudgment order of attachment preventing Defendants from transferring, encumbering, or otherwise affecting title to the properties located at 535 West End Avenue, Unit No. 15, New York, New York and 245 Trenor Drive, New Rochelle, New York.

b.    Actual damages in an amount to be determined at trial;

c.    Punitive damages;

d.    Pre-judgment interest;

e.    Reasonable attorney's fees and costs of litigation (which Plaintiffs are entitled to by contract); and

f.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial.

Dated: February 5, 2020
New York, New York

STEPTOE & JOHNSON LLP

By: /s/ Nathaniel J. Kritzer

Nathaniel J. Kritzer
Evan Glassman
Jason E. Meade
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900
Facsimile: (212) 506-3950
Email: nkritzer@steptoe.com

*Attorneys for Plaintiffs.*

21