Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 20-22782-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   MARK NORDLICHT,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12              United States Bankruptcy Court

13              300 Quarropas Street

14              White Plains, NY 10601

15

16              November 16, 2020

17

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:   UNKNOWN

Page 2

1  HEARING re Motion to Extend Time to File Motion to Dismiss,
2  Object to Discharge, Seek an Exception to Discharge, or
3  Object to Exemptions filed by Kerri A Lyman on behalf of
4  Richard Stadtmauer (ECF #40)
5
6  HEARING re Objection to Motion & Notice of Presentment (Doc
7  No. 46) (related document(s)40) filed by Scott Krinsky on
8  behalf of Mark A Nordlicht (ECF #52)
9
10 HEARING re Reply to Motion In support of Motion for
11 Extension of Time (ECF Nos. 40, 46) (related document(s)40)
12 filed by Kerri A Lyman on behalf of Richard Stadtmauer (ECF
13 #57)
14
15 HEARING re Sur-Reply to Motion and to Reply (Dkt No.'s 40,
16 46, 54 & 57) (related document(s)40) filed by Scott Krinsky
17 on behalf of Mark A Nordlicht (ECF #58)
18
19
20
21
22
23
24
25 Transcribed by: Sonya Ledanski Hyde

Page 3

1  APPEARANCES:
2
3  BACKENROTH FRANKEL & KRINSKY, LLP
4      Attorneys for Debtor
5      800 3rd Avenue
6      New York, NY 10017
7
8  BY: SCOTT KRINSKY (TELEPHONICALLY)
9
10 TULIS WILKES HUFF & GEIGER LLP
11     Attorney for U.S. Trustee
12     220 White Plains Road
13     2nd Floor
14     Tarrytown, NY 10591
15
16 BY: MARK S. TULIS
17
18 OTTERBOURG P.C.
19     Attorney for Melanie L. Cyganowski, as Receiver for
20     Platinum Partners
21     230 Park Avenue
22     New York, NY 10169
23
24 BY: ERIK BRADLEY WEINICK
25

Page 4

1           PROCEEDINGS
2       THE COURT: I'll turn to that one now -- which is
3  In Re Nordlicht.
4       MR. KRITZER: Good morning, Your Honor. Nate
5  Kritzer on behalf of Richard Stadtmauer.
6       THE COURT: Good morning.
7       MR. KRINSKY: Good morning, Your Honor, Scott
8  Krinsky, Backenroth Frankel, on behalf of the Debtor.
9       THE COURT: Good morning.
10      MR. LAMONICA: Good morning, Your Honor. This is
11 Salvatore LaMonica on behalf of the Chapter 7 Trustee.
12      THE COURT: Good morning.
13      MR. TULIS: Your Honor, this is Mark Tulis. I'm
14 the Trustee.
15      THE COURT: Good morning.
16      MR. WEINICK: Good morning, Your Honor. Erik
17 Weinick of Otterbourg PC on behalf of Melanie Cyganowski as
18 the TPCO receiver.
19      MR. BIXTER: Good morning, Your Honor. Richard
20 Bixter on behalf of the PPVA, joint official liquidators.
21      THE COURT: Good morning. Okay, I think that's
22 everyone. Someone should put that on mute. Put your cells
23 on mute. Okay, this is a hearing on a motion by Richard and
24 Merissa Stadtmauer, S-T-A-D-T-M-A-U-E-R, filed October 5,
25 2020 with a notice of presentment filed October 23, 2020 for

Page 5

1  extension of time to file motion to dismiss this Chapter 7
2  case, object to discharge under Section 727 with the
3  extension being sought under Bankruptcy Rule 4004, and to
4  seek an exception to discharge -- extension being under Rule
5  4007; the exception being under 523, the specific revisions
6  that require a timely objection.
7       And, finally, an extension of time under Rule
8  4003(b) to object to the Debtor's exemptions.
9       I've reviewed the objection to this motion filed
10 by the Debtor, the reply to that objection filed by the
11 Stadtmauers and the response to that reply. So, you should
12 assume I've been through those documents.
13      Let me ask a couple of questions first. I'm happy
14 to hear oral argument but this is not an evidentiary
15 hearing, although the facts are largely undisputed. My
16 first question is has the 341 meeting ended or does it still
17 continue?
18      MR. KRITZER: Your Honor, this is Nate Kritzer --
19 I'm sorry, I'll let Mr. Tulis respond.
20      MR. TULIS: Your Honor, this is Mark Tulis. I
21 have continued the 341 meetings.
22      THE COURT: All right. So, I think that probably
23 explains why there's not any opposition to the objection to
24 exemptions -- the extension. Because the 341 hasn't
25 concluded and, therefore, at least based on my reading of

Page 6

1  the rule, the time to object has been expired.
2      I don't know what it's going to adjourn to but the
3  focus of the objection is really on the request under Rules
4  4004 and 4007 for an extension of the time to object to
5  discharge and exception to discharge. Is there any
6  opposition to the rest of the motion?
7      MR. TULIS: No, Your Honor.
8      THE COURT: Okay. All right. So, we're really
9  focusing on cause for purposes of 4004 and 4007, which the
10 courts have state are to be reviewed under the same legal
11 standards.
12      So, with that, again, I read the parties'
13 pleadings but I'm happy to hear brief oral argument.
14      MR. KRITZER: Your Honor, Nate Kritzer, on behalf
15 of the Stadtmauers. Keeping in mind Your Honor's comment
16 that I'm certain you've read everything, I want to focus on
17 just a couple points and, in particular, in responding to
18 some of the statements in the supplemental objection filed
19 late last night that we, of course, have not yet had an
20 opportunity to respond to.
21      So, first, of course, the primary basis of our
22 motion is the fact that the Debtor did not attend the 341
23 meeting scheduled for September 24, 2020. There is not a
24 lot of case law that focuses on that situation.
25      I think it's -- from my reading of the case law,

Page 7

1  it's pretty rare for a Debtor to actually pose an extension
2  when the Debtor has missed a 341 meeting.
3      The one case we did find on this is In Re
4  Rodriguez 255 B.R. 118, cited in our brief, which states,
5  albeit in that case invicta, that the Debtor's nonattendance
6  at a Section 341 meeting was in itself cause to grant an
7  extension to object to this charge. And that makes perfect
8  sense.
9      It's actually also cause for much more drastic
10 remedies, such as dismissal of the case, as the Court held
11 in In Re Burgos and, of course, it frustrates the Creditors'
12 ability to do the diligence required to object to this
13 charge.
14      I want to point out a few points in this
15 supplemental objection that I'd like to respond to. On page
16 2 of the supplemental objection, the Debtor states that the
17 reply states for the first time that the Debtor failed to
18 respond to written follow-up questions. And that statement
19 is incorrect, because the Stadtmauers failed to provide any
20 written questions for the Debtor to respond to. That
21 statement is, I would just say, misleading.
22      We did ask several questions at the 341 which were
23 the subject of follow-up questions by the Trustee. Now, the
24 fact that we were not the one that sent them did not mean
25 that they were not sent and did not mean that particularly

Page 8

1  didn't -- that at that point, we were proposed counsel for
2  the Trustee, that they were not part of our overall
3  diligence.
4      Now, he goes on to say -- the Debtor goes on --
5      THE COURT: I'm sorry. You're not counsel to the
6  Trustee with regard to 727 matters, though, right?
7      MR. KRITZER: That's correct, Your Honor. But we
8  were attempting -- and we state this elsewhere in our brief
9  -- that the Trustee had stated an overall desire to
10 coordinate 2004 discovery so we didn't have five separate
11 2004s on the Debtor. And, Your Honor, we were attempting to
12 be respectful of that.
13      Now, the Debtor goes on to say that the Debtor did
14 respond to written questions from the Trustee. What he
15 omits to state is that response came after the October 5th
16 deadline.
17      That response was received, I believe, on October
18 16th. And then states the Stadtmauers did not request the
19 Debtors provide copies of their responses to the Trustee.
20      Now, we did, in fact, obtain those responses from
21 the Trustee and I don't agree that they, in fact, responded
22 to the questions. But in any event, that came after the
23 October 5th initial deadline.
24      I also want to respond to the Debtor's statements
25 that the Debtor did appear -- this is on page 6 -- they

Page 9

1  argue that the Debtor did later appear for the subsequently
2  adjourned third 341 meeting, which was attended by all other
3  Creditors.
4      What the Debtor omits to state there is that the
5  Debtor flatly refused to answer any of my questions at that
6  meeting. There was an outright refusal, there were
7  instructions not to answer, and the Debtor completely
8  refused.
9      Now, I don't know the extent to which that's
10 relevant, given that it occurred after November 3rd, but I
11 did want to point that out because I do think that the
12 Debtor's statement that he's cooperating by attending on
13 November 3rd and then refusing to answer our questions
14 outright is not -- does not have merit.
15      I also want to respond to some statements made on
16 page 8 of the brief. First of all, the Debtor argued that
17 lack of candor is not a basis for an extension of the
18 deadline. We've cited the Strong case, which held
19 otherwise. The citation is in our brief. I'm happy to
20 provide it if Your Honor needs it, but I'm sure Your Honor
21 has it. And also --
22      THE COURT: I do have it. I do have it, and I
23 believe you miscited it, given that --
24      MR. KRITZER: Your Honor, how so?
25      THE COURT: It's a local Delaware rule as far as -

3 (Pages 6 - 9)

Page 10

1  -
2       MR. KRITZER: Well, I'm referring to -- Strong --
3  so, I understand with respect to the 341 point, that in that
4  case the 341 had not been completed under the local rule. I
5  believe that Rodriguez still supports our argument that the
6  nonattendance of a 341 is cause for an extension. But I'm
7  actually referring to Strong -- we cited it for another
8  proposition that the Debtor's lack of candor in the
9  proceeding can be cause for an extension. And I don't --
10      THE COURT: Let me ask you -- I'm sure you're an
11 excellent lawyer, Mr. Kritzer, but how often have you
12 attended 341 meetings?
13      MR. KRITZER: In all candor, Your Honor, I had not
14 attended a 341 meeting before this case.
15      THE COURT: Okay. They're not depositions.
16 They're an initial dive into the Debtor's financial affairs,
17 primarily to give the Trustee further insight and an
18 opportunity to ask the Debtor for more information, that
19 other parties in interest also can attend.
20      Normally, people seek a deep dive with documents
21 through Rule 2004, which is broadly worded with relief
22 routinely granted, so that they can do that. So, when
23 people are talking about failures of candor and courts
24 refers to that, what they're normally referring to is either
25 one of two things -- either outright lying or misleading the

Page 11

1  Trustee and parties in interest at the 341 or not attending
2  it at all; or resisting legitimate discovery requests under
3  Rule 2004 and/or being in contempt of a Rule 2004 order.
4       Courts won't hesitate in those circumstances,
5  including this Court, to grant an extension motion. But
6  when there is not an outright lie, when, rather, there's an
7  adjourned 341 to ask more questions, and the Creditor
8  doesn't take up in any way the opportunity to seek discovery
9  under Rule 2004, the courts quite routinely deny motions
10 like this. Indeed, they deny them even where the creditor
11 did seek Rule 2004 discovery before the period had expired
12 but did so with insufficient time to have that discovery
13 before the period expired.
14      MR. KRITZER: Your Honor --
15      THE COURT: (indiscernible) 20 days, or in other
16 cases where it's four or seven.
17      MR. KRITZER: I understand all that. May I
18 respond briefly?
19      THE COURT: Well, I'm just dealing with the point
20 that says the Debtor was nonresponsive.
21      MR. KRITZER: Okay. And, Your Honor, I would --
22 so, a couple of points. First, on our seeking in 2004. You
23 know, there was a statement by the Trustee at the August
24 24th 2341 that he wanted to coordinate the 2004 discovery.
25 He did not believe it was fair to the Debtor to have five

Page 12

1  separate 341s. A paragraph 3 of my declaration I explain
2  that we followed up with Mr. Tulis regarding that, regarding
3  dates for the exam, and that the communication we received
4  back suggested that September 24th, the date that had been
5  set for the next 341, could be used either as an opportunity
6  for that 2004 or as a date to schedule it.
7       So, we were trying to comply with the way that the
8  Trustee wanted to manage discovery --
9       THE COURT: Well, I'm sorry, if it was going to be
10 -- if September 24 was going to be the date for the 2004,
11 why wasn't one sought then?
12      MR. KRITZER: Well, Your Honor, we believed that
13 September 24 was likely going to be the date to coordinate a
14 further 2004. Because the Trustee wanted to coordinate
15 among multiple creditors and have one or two, as opposed to
16 five. At that conference, the Debtor did not extend --
17      THE COURT: But the deadline to object is October
18 5th. So, if you're going to coordinate discovery and you're
19 facing a deadline that is 11 days away, then you fall into
20 cases like Newinski, which say that that's not enough time.
21      MR. KRITZER: Well, Your Honor, there's another
22 factor here that I think is worthy of consideration, and
23 it's that if the Court looks at the docket, and this is true
24 at the time, the docket states and has stated for some time
25 that the objection deadline for objections to discharge is

Page 13

1  December 7, 2020.
2       Now, I understand under the rules perhaps that's
3  incorrect, and I don't purport to tell Your Honor what Your
4  Honor meant to rule on the submissions that were submitted
5  before. Your Honor knows that part. But I --
6       THE COURT: They were stipulations. They're
7  stipulations. I just so ordered an agreement that extended
8  it for specific people or companies, or legal bodies.
9  There's no ruling.
10      MR. KRITZER: I understand, Your Honor, but be
11 that as it may --
12      THE COURT: Well, then why suggest -- you
13 wonder... You were suggesting far more than that, sir.
14      MR. KRITZER: I'm sorry? I apologize, Your Honor,
15 I don't follow.
16      THE COURT: You said you didn't purport to know
17 what I meant, what I ruled. The ruling was so ordered.
18 That was it. And it was a stipulation. So, I think it's
19 pretty clear. And you can understand it. And the reason
20 I'm somewhat angry is that this is not the first time, or
21 the second time, or the third time you have misrepresented
22 either the law or the facts in matters before me in this
23 case, including sending out subpoenas with no underlying
24 proceeding; including in filing a two-page motion that
25 doesn't assert any of this stuff for the extension on notice

Page 14

1 of presentment, which was inappropriate, and in your
2 citation of case law. Perhaps all of that is irrelevant to
3 the underlying request but I'm sick of it.
4      MR. KRITZER: Your Honor, I don't want to get in a
5 fight with Your Honor, certainly. I do take exception to
6 some of those statements, but I don't want to -- I don't
7 want to fight with Your Honor.
8      THE COURT: Do you have anything more to say in
9 support of your motion?
10      MR. KRITZER: Your Honor, if I may just check my
11 notes... I do not at this time, Your Honor.
12      THE COURT: Okay. So, before I hear from Mr.
13 Krinsky, Mr. Tulis, no one has attached, I think, to a
14 pleading on this motion the transcript of the August 341
15 meeting. Is it your belief that at that meeting or even at
16 the September 24th meeting Creditors were lulled into the
17 belief that they would not have to be diligent in pursuing
18 their investigation of the Debtor if they were going to ask
19 for an extension that would be opposed of the time to object
20 to discharge?
21      MR. TULIS: No, Your Honor. I tried to be very
22 careful and put on the record several times that -- again,
23 this is from memory and I apologize -- that everyone has got
24 to protect their own rights, that each creditor has a right
25 to ask questions in a 2004, and that the 341s -- although we

Page 15

1 did have a very lengthy one for well over an hour, but that
2 (indiscernible) their own rights and protect their rights.
3      THE COURT: Okay. Who attended the September 24
4 341? Do you remember?
5      MR. TULIS: No. I apologize. Let me look it up.
6 So, September -- no, that was my regular date, Your Honor,
7 so, I'd have to defer to Mr. Krinsky to see if he was there
8 and Mr. Kritzer to see if he was there. But since it was my
9 regular -- I don't believe -- and, again, I apologize -- I
10 don't believe that's the date that -- I have to check with
11 Mr. Krinsky. Is that the date, Mr. Krinsky, that the Debtor
12 did show up or did not?
13      MR. KRINSKY: No, September 24th was the date that
14 we believe was not going forward. According to the
15 transcript, it looked like the only ones that appeared were
16 the Trustee, who was on his general date, and Mr. Kritzer
17 for the Stadtmauers. It did not look, according to the
18 transcript, as if anyone else had appeared. No other
19 creditors.
20      MR. TULIS: And, Your Honor, I just want to
21 clarify. That is my memory. And Mr. Krinsky later
22 apologized. He thought that because he had a very lengthy
23 discussion earlier that month on the record with Mr.
24 Kritzer, myself and I forgot if anyone else asked questions.
25 So, and then we subsequently -- because of that, I adjourned

Page 16

1 it.
2      MR. KRINSKY: Yeah, the 341 on August 24th went
3 for almost 90 minutes. The other Creditors, who I believe
4 are on the line today, Mr. Bixter asked questions on behalf
5 of the PPA -- PPVA parties, and also Mr. Weinick asked
6 questions on behalf of the PPCO parties.
7      Now, there was also then later on, an adjourned
8 341 meeting on November 3rd. Those two creditors who had
9 apparently not appeared on September 24th did appear on that
10 day. They had no further questions. We appeared on that
11 day. And the day before that was -- the Stadtmauers made
12 their voluminous motion for the 2004. So, we didn't think
13 it was proper for them to continue to keep asking questions.
14      The other thing to bear in mind was that, Your
15 Honor, on the 24th, to show that we actually didn't believe
16 it was going forward, we had another matter on with Mr.
17 Tulis, the Lowenthal case, and we did not appear on that
18 either because we believed that they were supposed to go
19 forward with a Zoom link.
20      THE COURT: Okay, so, Mr. Kritzer, on the 24th, is
21 it your recollection that it was just the Trustee and you on
22 behalf of the Stadtmauers?
23      MR. KRITZER: I believe it was the Trustee --
24 yeah, I believe that's correct. Yes.
25      THE COURT: All right. So, at that point, it was

Page 17

1 clear, the parties weren't going to be coordinating anything
2 on the 24th?
3      MR. KRITZER: On the 24th, that's correct, because
4 there was no one else on the line.
5      THE COURT: Right. Including other creditor
6 representatives -- the other folks --
7      MR. KRITZER: I don't recall there being any other
8 Creditors on the line. I do not believe there were other
9 Creditors on the line.
10      THE COURT: Well, there's Ms. Cyganowski's counsel
11 and counsel for the other (indiscernible) --
12      MR. KRITZER: Oh, on the line today, yes. But I
13 mean -- I was talking about the 24th. I do not believe
14 there was other Creditor counsel online.
15      THE COURT: Okay. All right. So, anyway, I
16 wanted to ask that question and then happy to hear from Mr.
17 Krinsky.
18      MR. KRINSKY: Your Honor, we basically rely on the
19 papers. As Your Honor pointed out earlier, the cases are
20 pretty clear. That even if you seek Rule 2004 a few days
21 prior to the deadline, it's still fatal. Here they did not
22 seek Rule 2004 prior to the October 5th deadline. In fact,
23 they didn't seek Rule 2004 until November 2nd, which was 28
24 days later. In addition to not seeking any Rule 2004
25 discover, they never even contacted us. They never called

Page 18

1 us, they never emailed us. They only communication we had
2 from them in the entire case was the Zoom link. That's it.
3       The first communication after that that we had
4 from them was on October 5th by Mr. Kritzer's email at 10:42
5 a.m., and, of course, that email as well as the motion
6 contained the incorrect statements that they believed that
7 the deadline was extended somehow to December 7th. And that
8 mistaken belief really sort of colors what happened here.
9 And that's probably why they did not seek any Rule 2004
10 discovery or why they never contacted us, why they never
11 sent us any document requests, information requests, why
12 they never really did anything, Your Honor. That's really
13 all I have.
14      THE COURT: Okay. Anything else under this?
15      MR. KRINSKY: No, Your Honor.
16      THE COURT: Okay. All right. As I noted at the
17 beginning of this hearing, I have before me a motion by the
18 Stadtmauers for an extension of time for four things. Two
19 of those things are not opposed and, frankly, I don't
20 believe there is a deadline that has been missed -- namely,
21 an extension of time to file a motion to dismiss this
22 Chapter 7 case or an extension of time to object to
23 exemptions.
24      What is opposed and where there is applicable
25 deadline that has long since passed is the Stadtmauers'

Page 19

1 request to extend the time under Bankruptcy Rule 4004 to
2 object to the Debtor's discharge, and an extension of time
3 under Bankruptcy Rule 4007 to object to the dischargeability
4 of Debtor's debt to them under those sections of Section 523
5 of the Bankruptcy Code that have a time limitation on a
6 Creditor covered by Rule 4007.
7       Rule 4004(c)(1) provides that a Court must issue a
8 discharge after the expiration of the time fixed to object
9 to the discharge, unless a motion to extend the time for
10 filing a complaint objecting to discharge is pending. See
11 for example, In Re Tatro 2016 Bankr. Lexis 3898 at page 3,
12 (Bankr. W.D.N.Y. Nov. 4, 2016) and the cases cited therein,
13 including In Re Chua or Chua v. Robinson, 2015 U.S. District
14 Lexis 8027 (S.D.N.Y June 18, 2015).
15      The standard for evaluating a request for an
16 extension of time under both Bankruptcy Rule 4004(b) and
17 Bankruptcy Rule 4007(c) is the same. In Re Chatkhan, 455
18 B.R. 365 357 (Bankr. E.D.N.Y. 2011). Both deadlines can be
19 extended by the Court for cause, as set forth in respective
20 rules, and the determination of whether cause exists to
21 extend the deadlines that rest within the Court's discretion
22 -- provided, of course, that the Movant carries its burden
23 of proof to show cause.
24      As far as the burden of proof is concerned, see In
25 Re Grillo 212 B.R. 744 746 (Bankr. E.D.N.Y. 1997) and In Re

Page 20

1 Nowinski 291 B.R. 302 305 (Bankr. S.D.N.Y. 2003). In this
2 district and generally in the circuit, courts are guided by
3 the following five factors in evaluating whether a Movant
4 has established cause for such an extension: first, whether
5 the Creditor has received sufficient notice of the deadline
6 and the information to file an objection. Second, the
7 complexity of the case. Third, whether the Creditor has
8 exercised diligence. Four, whether the Debtor has refused
9 in bad faith to cooperate with the Creditor. And, five, the
10 possibility that proceedings pending in another forum will
11 result in collateral estoppel of the relevant issues. That
12 is the citation to Nowinski. See also In Re Chatkhan 455
13 B.R. 367, In Re Bressler, 2007 Bankruptcy Lexis,
14 (indiscernible) 3 at page 3 (Bankr. S.D.N.Y. Jan. 12, 2017),
15 and the Wellaport Court's opinion in Chua v. Robinson, which
16 appears at 2013 WL 3993741 page 2 (Bankr. S.D.N.Y. Aug. 2,
17 2013).
18      The cases are quite clear that the most decisive
19 factor is the Creditors' diligence. For example, In Re
20 Tatro, 2016 Bankr. Lexis 3898 at pages 6-8, In Re Kramer 492
21 B.R. 366 371 (Bankr. E.D.N.Y. 2013), In Re Chatkhan 455 B.R.
22 365 370 (Bankr. E.D.N.Y. 2011) and numerous other cases.
23      The Creditors' remarkable lack of diligence in
24 prosecuting their case was essentially the only factor and
25 clearly the decisive factor, in any event, taken into

Page 21

1 account by District Judge Garland in Chua v. Robinson, 2015
2 U.S. District Lexis 80827 at pages 4-5.
3       When referring to diligence, the courts
4 specifically focus on whether the Creditor took sufficient
5 steps to obtain documents and examine the Debtor under
6 Bankruptcy Rule 2004 in sufficient time to get such
7 information before the deadline. See In Re Gotay, 2005 WL
8 3789 30 at page 2, (Bankr. S.D.N.Y. Aug. 30, 2005).
9 "Generally, exercising diligence entails attending the 11
10 USC Section 341(a) meeting and seeking an order to examine
11 or obtain documents from the Debtor, pursuant to Federal
12 Rule Bankruptcy Procedure 2004, and failure to do so will
13 result in a finding that cause does not exist."
14      Citing, in addition to Newinski, In Re Mendelsohn
15 202 Bankr. Reporter 831 832 (Bankr. S.D.N.Y. 1996). See also
16 In Re Grillo 212 B.R. 744 at 747 (Bankr. E.D.N.Y. 1997)
17 where the Court found that cause had not been stablished,
18 where the Creditor had filed a Rule 2004 motion five days
19 before the deadline. Here the Creditor sat on its rights
20 and made no effort to obtain information in such a manner.
21      Here, a requested extension was filed at night on
22 the date, the last date under Rule 4004, October 5, that is.
23 A proper request for discovery under Rule 2004 was not made
24 until November. An improper request for discovery under
25 subpoenas purportedly issued by the Movant was made on

Page 22

1 October -- after the deadline in October.
2     Under those facts alone, the motion should be
3 denied. The motion asserts -- well, frankly, the motion
4 didn't assert because it was a two-page motion -- but the
5 lengthy reply to the Debtor's objection asserts that the
6 Creditor was diligent by attending two meetings under 11
7 U.S.C. Section 341, the so-called 341 meetings. The first
8 of which was quite lengthy as far as such meetings go. I
9 believe it's undisputed it was approximately an hour and a
10 half. It was attended, of course, by the Trustee, whose
11 meeting it actually is, as well as at least three other
12 representatives of Creditors, including the Movant. At that
13 meeting, the Creditor/Movant asked a number of questions, as
14 did well, at least one representative of one of the
15 Creditors, and the meeting was not closed. It was adjourned
16 roughly a month later until September 24th.
17     I believe the record is clear that the Trustee,
18 who's an experienced trustee and certainly knows how to warn
19 Creditors of their need to protect their own rights, alerted
20 the Creditors at the August meeting that they would need to
21 protect their own rights in respect of the deadlines facing
22 them, including the deadline to object to discharge. And
23 that they (indiscernible) their own rights with respect to
24 taking discovery under Bankruptcy Rule 2004.
25     The Trustee specifically, with the U.S. Trustee

Page 23

1 and two other parties whose representatives were present at
2 the August 341 meeting, obtained a consensual extension of
3 the date to object to discharge and with regard to one of
4 the other two parties, to object to the dischargeability of
5 that claim's debt. The stipulations were so ordered and
6 filed on the docket for anyone to see. They extended the
7 deadline to the date in December for those specific parties
8 and no one else.
9     The case law is clear and it clearly stands to
10 reason that the Creditor, like the Movant, does not get such
11 an extension unless an extension is granted to it, which
12 neither of these three extensions did. As the Debtor's
13 objection states, a Creditor cannot piggyback on such an
14 extension. It can do so only if the extension covers it as
15 well. See for example, In Re McCord 184 B.R. 522 (Bankr.
16 E.D. Michigan 1995). See also In Re Rivera Lugo 503 B.R.
17 1318 (Bankr. D. Puerto Rico 2013) and In Re Butler 94 B.R.
18 433 437 (Bankr. N.D. Texas 1989).
19     Clearly, the fact that the Debtor agreed to an
20 extension with Party X does not serve as cause or force an
21 extension on a Debtor for cause by Party Y. Although the
22 Movants argue that they believed that the Trustee would be
23 coordinating Rule 2004 discovery and would be discussing it
24 at the September 24 341 meeting with the Movants and the
25 other counsel who had appeared previously, it appears clear

Page 24

1 to me that the Trustee also alerted the Movants that they
2 needed to protect their own rights, and equally
3 significantly, but there was no discussion of coordinating
4 rule 2004 discovery at the September 24 341 meeting, nor
5 could there be since the other two parties, who logically
6 would need to be coordinated with, also did not attend that
7 meeting.
8     It is also clear on this record that, in the words
9 of the factors laid out by Newinski, Kramer in the other
10 cases, the Debtor here has not, in bad faith, cooperated
11 with the Creditor in respect to discovery. At most what
12 happened here is that at the original 341 meeting, which,
13 again, was quite lengthy, the Debtor answered questions but
14 questions were also left unanswered, to be answered in some
15 other context later in the case. The Debtor did not oppose
16 discovery. In fact, could not have since no discovery was
17 sought. It is not alleged that the Debtor failed to attend
18 the September 24 meeting in bad faith and, again, discovery
19 was not even sought after the 24th but, instead, was sought
20 only after the deadline had past.
21     While this case may be somewhat more complex than
22 most Chapter 7 cases, the Movants here did have a head start
23 based on the prepetition litigation that occurred, and did
24 not try to build on that head start, as I'd noted, during
25 the period before the expiree of the deadline except by

Page 25

1 asking questions at this first Section 341 meeting. So,
2 therefore, the complexity of this case is not a decisive
3 factor here, whereas it might have been if discovery had
4 actually been commenced and was underway and not completed
5 by the deadline.
6     Clearly, there was sufficient notice of the
7 deadline, which is not disputed. And, finally, there's no
8 suggestion that the possibility of proceedings pending in
9 another forum will result in collateral estoppel on the
10 relevant issues.
11     So, weighing all the factors but influenced
12 primarily, as I need to be, by the lack of diligence here, I
13 will deny the motion. I will repeat or quote a statement
14 from Judge Warren from the In Re Tatro case that I
15 previously cited, which to me is equally applicable here.
16     "The fact that the Debtor may be a bad fellow
17 cannot serve as a basis to avoid the limitations period
18 under Bankruptcy Rule 4004(c). The limitations period under
19 Rule 4007(c) and Rule 4004(a) protects all Debtors,
20 anonymous and the infamous alike, by ensuring that
21 objections to discharge are brought timely. Those rules
22 also allow the Court to protect Creditors by extending their
23 time to object to a Debtor's discharge for cause, if
24 requested timely.
25     "But if there are no objections or the Creditor

7 (Pages 22 - 25)

Page 26

1  has not carried its burden of proof, the Court should grant
2  the discharge forthwith. Citing Citibank, N.A. v. Emery,
3  132 F.3d 892 895 (2nd. Cir. 1998); In Re Tatro 2016 Bankr.
4  Lexis at page 8."
5      So, I'll ask the Debtor's counsel to email an
6  order denying the motion -- I'm sorry, the motion's request
7  for an extension of time under Rules 4007 and 4004 to object
8  -- I'm sorry -- to obtain an exception to discharge and to
9  object to the discharge.
10     As far as the other two request are concerned, the
11 motion is denied as moot without prejudice to make a further
12 objection before the expiration of the applicable time. Any
13 questions?
14     MR. KRINSKY: Your Honor, Scott Krinsky, attorney
15 for the Debtor. Would that then be two separate orders or
16 should --
17     THE COURT: No, it should be one order since the
18 motion covered all four requests. You could refer to all
19 four requests and then have a single paragraph on each one.
20     MR. KRINSKY: Okay. Thank you.
21     THE COURT: You don't need to formally settle that
22 order on Mr. Kritzer or anyone else, but you should copy him
23 as well as Mr. LaMonica and Mr. Tulis on the email to
24 chambers.
25     MR. KRITZER: Okay. Your Honor, thank you.

Page 27

1      THE COURT: Okay, thank you.
2      MR. KRITZER: Thank you, Your Honor.
3      MR. TULIS: Thank you, Your Honor.
4      THE COURT: Okay. All right.
5
6      (Whereupon these proceedings were concluded at
7  12:18 p.m.)

Page 28

1              CERTIFICATION
2
3      I, Sonya Ledanski Hyde, certified that the foregoing
4  transcript is a true and accurate record of the proceedings.
5
6
7
8  Sonya Ledanski Hyde
9
10
11
12
13
14
15
16
17
18
19
20 Veritext Legal Solutions
21 330 Old Country Road
22 Suite 300
23 Mineola, NY 11501
24
25 Date: December 3, 2020